STATE of Iowa, Appellee,

v.

Cary Lee STRAW, Appellant.

No. 04–0952.

Supreme Court of Iowa.

Feb. 3, 2006.

Linda Del Gallo, State Appellate Defender, and Greta A. Truman, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kristin Guddall, Assistant Attorney General, and W. Wayne Saur, County Attorney, for appellee.

STREIT, Justice.

Cary Lee Straw appeals from the judgments and sentences entered by the district court following his guilty pleas to possession of a controlled substance, third offense, and driving while barred. Straw claims the district court erred by not substantially complying with the requirements of Iowa Rule of Criminal Procedure 2.8(2)(*b* ). He also claims his counsel rendered ineffective assistance by failing to file a motion in arrest of judgment after the district court did not inform him of the maximum punishment he could face by pleading guilty. The court of appeals affirmed the decision of the district court. Upon our review, we affirm the decision on different grounds and preserve the issue for postconviction relief proceedings.

## I. Facts and Prior Proceedings

On a Tuesday afternoon in the fall of November 2003, Cary Lee Straw rolled through the town of Oelwein with a license plate that did not match his vehicle. A police officer stopped Straw to investigate the license plate and discovered Straw was driving while barred. The officer arrested him, searched him, and found a plastic bag containing marijuana and rolling papers in his pocket. The officer also noticed an open bottle of Jim Beam bourbon whiskey and an open bottle of vodka in the back seat. Straw was charged with possession of a controlled substance (third offense), driving while barred, and possession of drug paraphernalia. He was also cited for an open container violation and improper use of a vehicle registration.

Pursuant to a plea agreement, Straw pled guilty to possession of a controlled substance, third offense, and driving while barred. *See* Iowa Code §§ 124.401(5) (2003) (possession of a controlled substance, third offense, class "D" felony), 321.561 (driving while barred, aggravated misdemeanor). In exchange for his plea, the State dismissed the paraphernalia charge, as well as the improper use of registration and open container citations. The agreement also specified Straw would make his own recommendation for sentencing while the State would recommend concurrent sentences for both charges.[1]

Before accepting the plea, the court spoke with Straw and discussed the elements of the charged offenses, the factual basis for those charges, the right to go to trial, rights pursuant to trial, and the fact that if he pled guilty he would be forfeiting those rights. The court did not discuss the maximum punishment he would face by pleading guilty. The court accepted Straw's plea and found it "knowingly and voluntarily made" with a basis in fact. Straw never filed a motion in arrest of judgment to challenge the validity of his plea.

Weeks later, the sentencing court imposed sentences of up to five years for the possession of marijuana charge and up to two years for the driving-while-barred charge. The court ordered the sentences consecutive to each other and consecutive to a separate, unrelated conviction.

Straw appealed, contending the district court erred by not properly informing him of the potential punishments he faced for pleading guilty to these charges, and erred by not explaining these sentences could be ordered to run consecutively. Straw claimed this rendered his plea unknowing and involuntary. Straw asserted his claim should be considered directly on appeal because the district court did not adequately advise him of his right to file a motion in arrest of judgment. In the alternative, Straw claimed his counsel was ineffective for failing to ensure he was fully informed at the plea proceeding and for failing to file a motion in arrest of judgment.

We transferred the case to the court of appeals. The court of appeals found the district court substantially complied with its duty to inform Straw of his right to file a motion in arrest of judgment and determined Straw did not preserve the error for direct appeal because he did not file such a motion. It then analyzed whether Straw's counsel was ineffective. It determined Straw's counsel violated an essential duty by not filing a motion in arrest of judg-

---

1. For the third-offense possession charge, the State recommended a five-year prison sentence, a fine of $750, and a 180–day license revocation along with other related court costs. For the driving-while-barred charge, the State recommended a concurrent two-year prison sentence and a $500 fine.

ment, but ultimately affirmed the district court because it found Straw was not prejudiced by the error because he had received a favorable plea and the evidence against him was overwhelming. We granted further review.

## II. Error Preservation

The State contends Straw may not directly challenge his guilty plea on appeal because he did not file a motion in arrest of judgment contesting the legality of his plea. *See* Iowa R.Crim. P. 2.24(3) ("A defendant's failure to challenge the adequacy of a guilty plea proceeding by motion in arrest of judgment shall preclude the defendant's right to assert such challenge on appeal."); *see State v. Loye*, 670 N.W.2d 141, 149 (Iowa 2003).[2] Straw contends this requirement does not apply because the trial court did not adequately advise him that failure to file a motion in arrest of judgment would preclude him from later raising issues regarding his guilty plea on appeal. *See* Iowa R.Crim. P. 2.8(2)(*d*) ("The court shall inform the defendant that any challenges to a plea of guilty based on alleged defects in the plea proceedings must be raised in a motion in arrest of judgment and that failure to so raise such challenges shall preclude the right to assert them on appeal."); *Loye*, 670 N.W.2d at 149 (stating court's failure to comply with rule 2.8(2)(*d*) operates to reinstate the defendant's right to appeal the legality of his plea).

Following Straw's guilty plea, the district court told Straw:

Now, if you have—wish to appeal or challenge any of the proceedings that have taken place in the courtroom today, you have to file a paper that we call a Motion in Arrest of Judgment. That is simply a paper that basically says I didn't follow all of the correct procedures in taking your guilty plea and it gives me a chance to go back and correct that. Mr. Harden can explain that to you. But the important thing is that that paper must be filed not less than five days before sentencing. So, when we come back for sentencing, if no such motion has been filed, then we will proceed to sentencing, and we will assume that all the procedures we followed up to this point are correct. Do you understand that, sir?

Straw responded, "Yes, Your Honor."

We employ a substantial compliance standard in determining whether a trial court has discharged its duty under rule 2.8(2)(*d*). *Id.* at 150. The court must ensure the defendant understands the necessity of filing a motion to challenge a guilty plea and the consequences of failing to do so. *Id.*

The court's comments were sufficient to discharge its duty under rule 2.8(2)(*d*). Instead of quoting rule 2.8(2)(*d*) verbatim, the court performed its duty commendably by using plain English to explain the motion in arrest of judgment. The court's statement plainly indicated that if Straw wanted to appeal or challenge the guilty plea, he had to file a motion in arrest of judgment. It also indicated this motion had to be filed not less than five days before sentencing. In whole, it conveyed the pertinent information and substantially complied with the requirements of rule 2.8(2)(*d*). Therefore, Straw's failure to move in arrest of judgment bars a direct appeal of his conviction.

---

**2.** Prior to the enactment of rule 2.24(3), a defendant could directly appeal his or her conviction based on a guilty plea. *See State v. Fluhr*, 287 N.W.2d 857, 860 (Iowa 1980) (reversing guilty plea conviction on direct appeal because the court did not substantially comply with procedural guidelines when accepting the guilty plea).

Iowa R.Crim. P. 2.24(3)(*a*); *State v. Brooks*, 555 N.W.2d 446, 448 (Iowa 1996). However, this failure does not bar a challenge to a guilty plea if the failure to file a motion in arrest of judgment resulted from ineffective assistance of counsel. *Brooks*, 555 N.W.2d at 448.

### III. Merits and Scope of Review

 An ineffective-assistance-of-counsel claim in a criminal case "need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes." Iowa Code § 814.7(1) (2005). The defendant may raise the ineffective assistance claim on direct appeal if he or she has reasonable grounds to believe the record is adequate to address the claim on direct appeal. *Id.* § 814.7(2). If an ineffective-assistance-of-counsel claim is raised on direct appeal from the criminal proceedings, we may decide the record is adequate to decide the claim or may choose to preserve the claim for postconviction proceedings. *Id.* § 814.7(3). Only in rare cases will the trial record alone be sufficient to resolve the claim on direct appeal. *State v. Atley*, 564 N.W.2d 817, 833 (Iowa 1997) (stating claims of ineffective assistance of counsel raised on direct appeal are ordinarily reserved for postconviction proceedings to allow full development of the facts surrounding counsel's conduct); *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978). We review ineffective-assistance-of-counsel claims de novo. *State v. Button*, 622 N.W.2d 480, 483 (Iowa 2001).

### A. Ineffective Assistance

 To establish his claim of ineffective assistance of counsel, Straw must demonstrate (1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 693 (1984); *State v. Dalton*, 674 N.W.2d 111, 119 (Iowa 2004). Straw must prove both elements by a preponderance of the evidence. *State v. Gant*, 597 N.W.2d 501, 504 (Iowa 1999). As discussed in the following analysis, the record does not adequately present the issues in this case and the case is more properly addressed in a postconviction relief hearing. *See State v. Ueding*, 400 N.W.2d 550, 553 (Iowa 1987).

### 1. Failure to Perform an Essential Duty

 Under the first prong of this test, counsel's performance is measured "against the standard of a reasonably competent practitioner with the presumption that the attorney performed his duties in a competent manner." *Dalton*, 674 N.W.2d at 119. Straw claims his counsel violated an essential duty by failing to file a motion in arrest of judgment prior to sentencing. There is adequate evidence in the record to decide this issue on direct appeal.

 Due process requires the defendant enter his guilty plea voluntarily and intelligently. *State v. Philo*, 697 N.W.2d 481, 488 (Iowa 2005). "If a plea is not intelligently and voluntarily made, the failure by counsel to file a motion in arrest of judgment to challenge the plea constitutes a breach of an essential duty." *Id.* In order to ensure a guilty plea is voluntarily and intelligently made, the court must articulate the consequences of the plea to the defendant. *State v. Boone*, 298 N.W.2d 335, 337 (Iowa 1980). Iowa Rule of Criminal Procedure 2.8(2)(*b*) provides the court with a blueprint for the guilty plea proceeding:

> Before accepting a plea of guilty, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) The nature of the charge to which the plea is offered.

(2) The mandatory minimum punishment, if any, *and the maximum possible punishment* provided by the statute defining the offense to which the plea is offered.

(3) That a criminal conviction, deferred judgment, or deferred sentence may affect a defendant's status under federal immigration laws.

(4) That the defendant has the right to be tried by a jury, and at trial has the right to assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right not to be compelled to incriminate oneself, and the right to present witnesses in the defendant's own behalf and to have compulsory process in securing their attendance.

(5) That if the defendant pleads guilty there will not be a further trial of any kind, so that by pleading guilty the defendant waives the right to a trial.

Iowa R.Crim. P. 2.8(2)(*b*) (emphasis added). Substantial compliance with this rule is required. *State v. Kirchoff,* 452 N.W.2d 801, 804 (Iowa 1990).

The State concedes the district court did not substantially comply with rule 2.8(2)(*b*)(2) when it omitted any mention of the punishment Straw could face by pleading guilty to the charges in this case. *See, e.g., id.* (holding substantial compliance is the measure for judging whether the requirements of rule 2.8(2)(*b*) have been met). When Straw's counsel did not bring this matter to the court's attention or file a motion in arrest of judgment, his counsel failed to perform an essential duty. *See State v. Myers,* 653 N.W.2d 574 (Iowa 2002) (finding counsel breached an essential duty by failing to raise court's failure to inform the defendant of the right to compulsory process); *State v. Kress,* 636 N.W.2d 12 (Iowa 2001) (holding defense counsel's failure to correct court's misinformation concerning defendant's potential sentence exposure, or to file motion in arrest of judgment raising the issue, placed counsel below range of normal competency).

## 2. Resulting Prejudice

Straw claims he suffered prejudice because, had he understood the sentences could be made consecutive,[3] he would not have pled guilty. The fighting issue in this case is what standard should be applied to evaluate Straw's claim under this prejudice element. Four cases guide our analysis.

In 1983, we reviewed Joseph Ross Meier's appeal from the denial of his application seeking postconviction relief from his conviction pursuant to a guilty plea. *Meier v. State,* 337 N.W.2d 204, 205 (Iowa 1983). In the postconviction relief (PCR) hearing Meier established a record for our review. *Id.* At the PCR hearing, Meier described how his original counsel had told

---

**3.** The State claims Straw knew there was a possibility the sentences could be consecutive because the plea agreement recommended concurrent sentences. This argument is similar to the argument the State made in *State v. White,* 587 N.W.2d 240, 246 (Iowa 1998). In *White,* the defendant pled guilty to two counts of possession of methamphetamine with intent to deliver, but the district court failed to inform the defendant, prior to the acceptance of his guilty plea, that consecutive sentences could be imposed. 587 N.W.2d at 246. The State argued the district court satisfied rule 2.8(2)(*b*) by informing the defendant what the penalty was for each charge, because the defendant could "figure out by implication that the sentences could be ordered to be served consecutively." *Id.* We rejected this argument because it left the defendant "partially informed, but uninformed of the true maximum possible punishment of twenty years imprisonment coming from consecutive sentences." *Id.* We reject the State's similar argument in this case.

him that if he stood trial and was convicted, he would be given a twenty-five year sentence with a mandatory five-year sentence; however, if he pled guilty, he would get the twenty-five years without the mandatory term. *Id.* He thought his counsel meant that if he accepted the bargain, he could be released in less than five years; however, if he did not accept the bargain and was eventually convicted, then he would be in prison at least five years before he would be eligible for any kind of release. *Id.* His original counsel substantiated his claim—"I am sure that I told Mr. Meier that if we stood trial and ... that sentencing provision were invoked, that he would serve five years and be eligible for parole at the expiration of five years." *Id.* Based on his counsel's advice, Meier pled guilty and waived his right to trial. *Id.*

The PCR trial court found Meier's original counsel misadvised him of the law. *Id.* However, because Meier "got what he bargained for; that is, a 25–year sentence without a mandatory minimum sentence," the court concluded the record did not demonstrate his counsel was so "mistaken or careless in his advice to [Meier] to amount to ineffective assistance of counsel." *Id.* at 205–06. Our court disagreed and reversed. *Id.* at 208. Noting the test in this context was for ineffective assistance of counsel, we determined Meier's trial counsel gave erroneous advice regarding the law and Meier relied on this advice in waiving trial and pleading guilty. *Id.* at 206–08. When it came to the prejudice element, we did not focus on what sentence Meier received, but instead focused on what he relinquished. *Id.* at 208. We found a due process deprivation occurred when Meier was unable to make an intelligent and informed choice from among his alternate courses of action at the plea hearing and we would not speculate as to the outcome of the trial waived by the

guilty plea. *Id.* We reversed and remanded so Meier could plead anew. *Id.*

In *Meier,* the dissent focused on whether Meier proved he was substantially prejudiced by his attorney's misadvice. *Id.* The dissent noted the following evidence indicated there was no actual prejudice suffered by Meier: (1) there was "not even a hint of evidence that petitioner could have obtained a better result," (2) his original attorney testified Meier had no chance to prevail in a jury trial on the issue of culpability, and (3) his original attorney thought the best deal was to take the plea bargain. *Id.* In the face of these three findings, the dissent found Meier failed to prove he suffered prejudice from his counsel's misadvice. *Id.*

Two years after *Meier,* the United States Supreme Court discussed the prejudice element of an ineffective-assistance-of-counsel claim in the context of a guilty plea. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985). In *Hill v. Lockhart,* the Court considered a prisoner's petition for habeas corpus alleging his trial counsel was ineffective in failing to accurately inform him as to his eligibility for parole. *Id.* The district court denied habeas relief because neither state law nor federal law required that Hill be informed of his parole eligibility date prior to pleading guilty. *Id.* at 55, 106 S.Ct. at 368, 88 L.Ed.2d at 207–08. A divided Court of Appeals for the Eighth Circuit affirmed the district court, with the dissent arguing a hearing should have been held to determine whether Hill's counsel wrongly advised him on his parole eligibility prior to the plea. *Hill v. Lockhart,* 731 F.2d 568, 573 (8th Cir.1984).

The Supreme Court affirmed the decision of the court of appeals, stating the prejudice element in a guilty plea case "focuses on whether counsel's constitution-

ally ineffective performance affected the outcome of the plea process." *Hill,* 474 U.S. at 59, 106 S.Ct. at 370, 88 L.Ed.2d. at 210. The Court stated: "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

The Court described this test by explaining how, in many guilty plea cases, the prejudice inquiry would resemble the same inquiry as when the conviction was obtained through trial. *Id.* For example, when the alleged error of counsel is a failure to investigate potentially exculpatory evidence, the determination whether this failure prejudiced the defendant by causing him to enter into a plea agreement rather than go to trial will depend on whether it was likely the discovered evidence would have changed his *counsel's* recommendation as to the plea. *Id.* "This assessment ... will depend in large part on a prediction whether the evidence likely would have changed the outcome of [the] trial." *Id.* However, the Court did not reach the question whether erroneous advice by counsel as to parole eligibility would be constitutionally ineffective assistance of counsel because Hill "did not allege in his habeas petition that had counsel correctly informed him about his parole eligibility date ... he would have pleaded not guilty and insisted on going to trial." *Id.* at 60, 106 S.Ct. at 371, 88 L.Ed.2d at 211. The Court noted he "alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty" and it therefore found Hill did not satisfy the second prong of the ineffective assistance test. *Id.*

After the *Hill* decision, we applied the "reasonable probability" standard to inef-fective-assistance-of-counsel claims. *See, e.g., State v. Hopkins,* 576 N.W.2d 374, 378 (Iowa 1998) (evaluating prejudice in the context of a conviction by jury trial); *Irving v. State,* 533 N.W.2d 538, 541 (Iowa 1995) (evaluating prejudice in the context of a conviction by guilty plea).

In *State v. Kress,* we again discussed the prejudice element of an ineffective-assistance-of-counsel claim in the context of a guilty plea. In *Kress,* the trial court accepting the guilty plea misinformed the defendant that the sentencing court could waive a mandatory minimum sentencing requirement. 636 N.W.2d at 21–22. We began our ineffective-assistance-of-counsel analysis by applying the familiar two-step test. *Id.* at 20. We first determined the defendant's trial counsel failed to perform an essential duty by not correcting the court's misinformation or filing a motion in arrest of judgment. *Id.* at 22. We then turned to the second element, resulting prejudice. The following is our entire analysis of this element:

> Turning to the prejudice element, we think the prejudice results from what Kress relinquished. [*Meier,* 337 N.W.2d at 208]. Kress "had an unqualified constitutional right to a trial on the issue of [her] guilt, which she [may have] abandoned on the strength of [the court's misinformation]." *Id.* We do not speculate on the outcome of the trial waived by her guilty plea. *Id.* As mentioned, the remedy called for in these circumstances is to set aside the conviction and sentence and allow the defendant to plead anew.

*Id.* Rather than explicitly discussing the *Hill* reasonable probability analysis, we cited *Meier* and concluded there was resulting prejudice.

In *State v. Myers,* we again considered a direct appeal of an ineffective-assistance-of-counsel claim in the context of a guilty

plea. 653 N.W.2d at 577. In this case, the defendant was not informed of the right to compulsory process during the plea colloquy. *Id.* The defendant claimed she received ineffective assistance of counsel when her counsel failed to file a motion in arrest of judgment after the court told her "you … have the right to present any witnesses in your own defense" rather than explaining she could force the attendance of such witnesses, as required by rule 2.8(2)(*b*)(4) (compulsory process). *Id.* We determined the trial counsel's failure to correct the judge or file a motion in arrest of judgment established the first prong of the test for ineffective assistance of counsel, but we found the second prong of the ineffective-assistance-of-counsel test to be "more problematic." *Id.* at 578. We did not cite either *Meier* or *Kress* as authority for the prejudice element. Instead, we analyzed the prejudice element under the "reasonable probability" framework set forth in *Hill. Id.* After a thorough analysis under this standard, we concluded the defendant failed to prove, or even assert, there was "a reasonable probability that, 'but for counsel's error[], [s]he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (quoting *Hill,* 474 U.S. at 59, 106 S.Ct. at 370, 88 L.Ed.2d at 210). We stated the defendant's right of compulsory process could not be claimed "in a vacuum," and a conclusory claim that she was ready to insist on going to trial was not a sufficient assertion of prejudice. *Id.* at 578–79. We noted the defendant had not claimed there were any witnesses whose testimony was denied her because she could not force them to testify. *Id.* at 579.

The brevity of our analysis of the prejudice element in *Kress* has led some to characterize our holding as a *per se rule* of prejudice when the district court fails to tell the defendant the maximum sentence on an ineffective-assistance-of-counsel claim. We reject this characterization because *Kress* was an aberration which failed to consider the analysis set forth in *Hill.* We also refuse to adopt a per se rule of prejudice because such a rule would force us to accept conclusory claims of prejudice without the benefit of a true review of the circumstances surrounding the plea. Under the "reasonable probability" test, the *defendant,* who has already admitted to committing the crime, *has the burden* to prove he or she would not have pled guilty if the judge had personally addressed the maximum punishment for his or her crimes. On the other hand, if we adopted a per se rule, some defendants would grin like a Cheshire cat as we gave them a second bite at the apple—even though they committed the crime and actually knew the maximum length of punishment for the crime.[4] Such a rule would under-

**4.** The rare instances where we presume prejudice are easily distinguishable from the present case. We presume prejudice when the defendant is *denied* his or her right to a jury trial because the right to a jury trial is one of only a handful of "important" constitutional rights that are fundamental to our justice system. *State v. Stallings,* 658 N.W.2d 106, 112 (Iowa 2003) (citing *McGurk v. Stenberg,* 163 F.3d 470, 474 (8th Cir.1998) ("Despite the strong presumption that constitutional error can be harmless, we conclude that the denial of a jury trial is a structural error subject to automatic reversal.") (Internal quotations and citations omitted.)). We also presume prejudice when there was no factual basis for the plea because we do not want to convict people for crimes they did not commit. *State v. Hack,* 545 N.W.2d 262, 263 (Iowa 1996); *see State v. Sanders,* 309 N.W.2d 144, 145 (Iowa Ct.App.1981). In the present case, neither of these pressing concerns exists. Straw does not contend he did not commit the crime, and he does not contend he was denied the right to trial. Instead, he argues *his decision* not to go to trial would have been different had he known the maximum punishment for the crime he committed. Rather than presume his decision would have

mine the court's integrity and erode the public's confidence in its criminal justice system. Though, on its face, it may appear easier to reverse the conviction and let Straw plead anew, the driving force behind our decision is the common-sense notion that a conviction will not be reversed unless the judicial misstep complained of prejudiced the defendant.

Our standard for the prejudice element in ineffective-assistance-of-counsel claims remains consistent—in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial. *Id.* (quoting *Hill,* 474 U.S. at 59, 106 S.Ct. at 370, 88 L.Ed.2d at 210).

Under the "reasonable probability" standard, it is abundantly clear that most claims of ineffective assistance of counsel in the context of a guilty plea will require a record more substantial than the one now before us. Unlike our decision in *Meier,* there is nothing in this record to indicate whether or not Straw's trial counsel told him about the possibility of consecutive sentences. Such evidence could be a significant part of our prejudice analysis.[5] This case exemplifies why claims of ineffective assistance of counsel should normally be raised through an application for postconviction relief. In only rare cases will the defendant be able to muster enough evidence to prove prejudice without a postconviction relief hearing. *Atley,*

564 N.W.2d at 833; *Coil,* 264 N.W.2d at 296.

## IV. Conclusion

Once a defendant waives his or her right to a trial by pleading guilty and then does not file a motion in arrest of judgment prior to sentencing, "the State is entitled to expect finality in the conviction." *State v. Mann,* 602 N.W.2d 785, 789 (Iowa 1999). "This is true because '[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction.'" *State v. LaRue,* 619 N.W.2d 395, 397 (Iowa 2000) (quoting *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969)). Nothing in the record before us indicates we should overturn Straw's conviction. We affirm the decision of the court of appeals and uphold the conviction and sentence. Straw's ineffective-assistance-of-counsel claim is preserved for postconviction relief proceedings.

**AFFIRMED.**

All justices concur except LAVORATO, C.J. and WIGGINS, J., who dissent.

LAVORATO, Chief Justice (dissenting).

This case involves a claim of ineffective assistance of counsel arising out of a guilty plea. Pursuant to a plea agreement, the defendant pleaded guilty to two offenses: possession of a controlled substance and driving while barred. In return for the plea, the State agreed to drop several oth-

---

been different, Straw ought to prove that point on his own.

5. The prejudice suffered by a defendant who does not know the potential length of imprisonment for his guilty plea is unique because it "'is virtually self-evident that a defendant's decision to plead guilty ... is a grave and personal judgment, which a defendant should not be allowed to enter without full compre-

hension of possible consequences of conviction by such plea.'" *White,* 587 N.W.2d at 246 (quoting *State v. Irish,* 223 Neb. 814, 394 N.W.2d 879, 884–85 (1986) (Shanahan, J., dissenting)). Anyone "unaware that the term or duration of incarceration acutely affects a defendant's decision regarding a guilty ... plea ... is oblivious to one of the realities in our system for efficient criminal justice." *Id.*

er charges. The record is clear that before the district court accepted the plea, it failed to advise the defendant that it could impose consecutive sentences.

On appeal, the defendant contended that the district court erred when it did not inform him that it could impose consecutive sentences and for that reason the plea was not knowingly and voluntarily entered. The defendant also contended that his counsel was ineffective for failing to ensure that the defendant was fully informed at the plea proceeding regarding the potential for consecutive sentences and for failing to file a motion in arrest of judgment challenging the plea on this basis.

I agree with the majority that when the defendant's counsel did not bring this matter to the district court's attention or failed to file a motion in arrest of judgment, counsel failed to perform an essential duty. I disagree with the majority's holding on the prejudice prong of the claim for ineffective assistance of counsel. My reasons for disagreeing follow.

As we noted in *State v. Loye,*

> The Due Process Clause [of the Fourteenth Amendment to the Federal Constitution] requires that a guilty plea be voluntary. "To be truly voluntary, the plea must not only be free from compulsion, but must also be knowing and intelligent." Consequently, a defendant must be aware not only of the constitutional protections that he gives up by pleading guilty, but he must also be conscious of "the nature of the crime with which he is charged" and the *potential* penalties.

670 N.W.2d 141, 150–51 (Iowa 2003) (emphasis added) (citations omitted); *see also State v. Philo,* 697 N.W.2d 481, 488 (Iowa 2005) (" 'A guilty plea results in a waiver of several constitutional rights. For the waiver to be valid, there must be an intentional relinquishment of known rights.

Due process therefore requires that a defendant enter a guilty plea voluntarily and intelligently.' " (Citation omitted.)).

Iowa Rule of Criminal Procedure 2.8(2)(*b* ) was passed to ensure that pleas are voluntary, *State v. Fluhr,* 287 N.W.2d 857, 863 (Iowa 1980), *overruled on other grounds by State v. Kirchoff,* 452 N.W.2d 801, 804–05 (Iowa 1990), and "codifies this due process mandate," *Loye,* 670 N.W.2d at 151. Rule 2.8(2)(*b* ) provides in part:

> The court may refuse to accept a plea of guilty, and shall not accept a plea of guilty without first determining that the plea is made voluntarily and intelligently and has a factual basis. Before accepting a plea of guilty, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> (1) The nature of the charge to which the plea is offered.
>
> (2) *The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered.*
>
> (3) That a criminal conviction, deferred judgment, or deferred sentence may affect a defendant's status under federal immigration laws.
>
> (4) That the defendant has the right to be tried by a jury, and at trial has the right to assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right not to be compelled to incriminate oneself, and the right to present witnesses in the defendant's own behalf and to have compulsory process in securing their attendance.
>
> (5) That if the defendant pleads guilty there will not be a further trial of any

kind, so that by pleading guilty the defendant waives the right to a trial. Iowa R.Crim. P. 2.8(2)(*b*)(1)-(5) (emphasis added).

As the majority notes, we apply a substantial compliance standard in assessing whether the trial court has adequately informed the defendant of the matters listed in the rule. *Loye,* 670 N.W.2d at 151. " 'Substantial compliance' requires at a minimum that the defendant be informed of these matters and understand them." *Id.*

A failure to challenge the plea in a motion in arrest of judgment precludes a defendant from asserting such a challenge on appeal. Iowa R.Crim. P. 2.24(3)(*a*). One exception occurs when during the plea the court fails to advise the defendant, as required by rule 2.8(2)(*d*), of the necessity to file the motion within the time set out in rule 2.24(3)(*b*). *Loye,* 670 N.W.2d at 149–50. Another exception occurs when the failure to file the motion results from ineffective assistance of counsel, *State v. Brooks,* 555 N.W.2d 446, 448 (Iowa 1996), which is the case here.

On direct appeal, the remedy for a successful challenge to a guilty plea is to vacate the plea, reverse the judgment of conviction, and remand the case to allow the defendant to plead anew. *Loye,* 670 N.W.2d at 153–54 (because the district court did not substantially comply with rule 2.8(2)(*b*)(1)-(2) when it did not confirm that the defendant understood the nature of the charges to which she intended to plead guilty or the maximum possible punishments that might result from the plea, the plea violated the Due Process Clause and for that reason had to be set aside); *State v. White,* 587 N.W.2d 240, 246–47 (Iowa 1998) (plea was successfully challenged on appeal based on ground that defendant was not informed that the maximum punishment that could be imposed

included consecutive sentences). *The remedy is applied even if counsel has discussed the same matters with the defendant in preparation for the plea hearing. Loye,* 670 N.W.2d at 153. Thus reversal is automatic if the court taking the plea does not substantially comply with the requirements of the rule. In these circumstances, we are strictly enforcing the rule.

When the appeal occurs in the context of a claim of ineffective assistance of counsel, we have applied essentially the same remedy with some modification if the plea lacks a factual basis. *See, e.g., State v. Hack,* 545 N.W.2d 262, 263 (Iowa 1996). When the claim is lack of a factual basis, two possible remedies exist. *State v. Mitchell,* 650 N.W.2d 619, 621 (Iowa 2002) (per curiam). If the record establishes that the defendant was charged with the wrong crime, we have vacated the judgment of conviction and sentence and remanded for dismissal of the charge. *Id.; Hack,* 545 N.W.2d at 263. In those circumstances, we allow the State to reinstate a charge dismissed in contemplation of a valid plea or re-indict the defendant under a code section supportable by the available evidence. *Hack,* 545 N.W.2d at 263. But if it is possible that a factual basis could be shown, the more appropriate remedy is to vacate the sentence and remand for further proceedings to give the State an opportunity to establish a factual basis. *Mitchell,* 650 N.W.2d at 621.

The net result of *Mitchell* and *Hack* is that we presume prejudice, that is, we apply a prejudice per se rule, which is contrary to the prejudice prong of a claim for ineffective assistance of counsel. Ordinarily, under the prejudice prong of a claim for ineffective assistance of counsel, we apply the prejudice requirement in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) when a defendant is claiming a violation of his

rights under the Sixth Amendment to the Federal Constitution. Under the *Strickland* requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. The prejudice requirement was based on the Court's conclusion that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696.

In *Hack*, we expressed our reasons for refusing to apply the *Strickland* prejudice requirement in a claim of ineffective of assistance of counsel arising out of a guilty plea that lacks a factual basis:

> The court of appeals affirmed Hack's conviction, preserving the allegation of ineffective assistance of counsel for post-conviction review. Its decision rested on the belief that counsel may have had strategic reasons for permitting his client to plead guilty notwithstanding the lack of a factual basis. *Endorsing such strategies, however, would erode the integrity of all pleas and the public's confidence in our criminal justice system. For this reason, they cannot be permitted.*

545 N.W.2d at 263 (emphasis added) (citations omitted).

I submit the same reasons support a refusal to apply the *Strickland* prejudice requirement when defendants plead guilty without being informed of the maximum possible punishment they face. *White* involved a direct appeal in which we concluded that a failure to inform the defendant of the possibility of consecutive sentences rendered his guilty plea involuntary. 587 N.W.2d at 241. We said in *White:*

"Duration of incarceration unquestionably goes to the very heart of voluntariness required for a valid waiver of a defendant's right to trial on the charge alleged...."

"It is virtually self-evident that a defendant's decision to plead guilty ... to a criminal charge is a grave and personal judgment, which a defendant should not be allowed to enter without full comprehension of possible consequences of conviction by such plea. Whether it be the maximum term of imprisonment authorized by the statute prescribing a penalty for conviction of a crime or whether it be a combination of terms of imprisonment imposed as penalties for convictions of separate crimes, duration of possible imprisonment is an important factor affecting any defendant's intelligent choice between the alternatives confronting a defendant—going to trial or entering a plea of guilty.... Anyone unaware that the term or duration of incarceration acutely affects a defendant's decision regarding a guilty ... plea in a criminal case is oblivious to one of the realities in our system for efficient criminal justice."

*Id.* at 246 (citation omitted).

In terms of deprivation of due process, I equate a failure to inform defendants of the maximum possible punishment with a failure to establish a factual basis. As the above quote so eloquently suggests, nothing is more important to defendants contemplating a plea than knowing the maximum possible punishment they face. Rule 2.8(2)(*b*) requires a factual basis for a plea as well as requiring the court to inform the defendant of the maximum possible punishment. Both requirements go to the heart of voluntariness. Moreover, contrary to the majority's view, a failure to abide by either requirement violates the spirit and purpose of rule 2.8(2)(*b*) and

erodes the integrity of the plea process along with the public's confidence in the criminal justice system.

In *State v. Stallings*, we held that trial counsel was ineffective for failing to comply with a rule to ensure that the defendant's waiver of a jury trial was knowing, voluntary, and intelligent. 658 N.W.2d 106, 111–12 (Iowa 2003). In coming to that conclusion, we did not apply the *Strickland* prejudice requirement but instead we presumed prejudice. In doing so, we said: "Because the right to a jury trial is so fundamental to our justice system, we conclude this is one of those rare cases of a 'structural' defect in which prejudice is presumed." *Id.* at 112. It goes without saying that a failure to inform the defendant of the maximum possible punishment renders the plea defective. Because liberty is such a fundamental aspect of the Due Process Clause, I would similarly consider such a plea a structural defect in which prejudice should be presumed. Moreover, the prejudice resulting from such a plea is the relinquishment of a constitutional right to a trial by jury, *Meier v. State*, 337 N.W.2d 204, 208 (Iowa 1983), which is fundamental to our justice system, *Stallings*, 658 N.W.2d at 112. Although the majority mentions *Stallings*, it neglects to answer the question why the failure to advise a defendant of the maximum possible punishment in a plea is not a structural defect. As in *Stallings*, Straw waived his right to a jury trial in a plea process that was constitutionally defective.

What I am suggesting is not novel. In *Commonwealth v. Persinger*, a case we cited with approval in *White*, the trial court imposed consecutive sentences following a plea that was devoid of any mention of potential consecutive sentences. 532 Pa. 317, 615 A.2d 1305, 1307 (1992). The superior court affirmed. *Id.* at 1306. The sole issue on appeal to the supreme court of Pennsylvania was whether trial counsel was ineffective for failing to file a motion to withdraw defendant's guilty plea. *Id.* Although the defendant was informed of the maximum sentence possible on each count, the defendant was not informed that the sentences could be imposed consecutively. *Id.* at 1307. Reversing and remanding the case for trial, the supreme court of Pennsylvania stated:

Requiring the trial court to tell the defendant that the sentences may be imposed consecutively and what the total aggregate sentence could be will not significantly lengthen the colloquy or place any undue burden on the court. Accordingly, we find that the absence of this inquiry from the transcript renders the colloquy defective. As a result, appellant has suffered a manifest injustice. We find therefore, that appellant's claim has merit. *We also find that because there were adequate grounds for withdrawal of appellant's plea, counsel's failure to seek withdrawal of appellant's plea was prejudicial to appellant.*

*Id.* at 1308 (emphasis added); *accord Pennsylvania v. Jones*, 433 Pa.Super. 421, 640 A.2d 1330, 1335 (1994). A later superior court decision characterized this holding as a per se prejudice rule. *Pennsylvania v. Stanley*, 830 A.2d 1021, 1026 (2003); *see also North Dakota v. Schumacher*, 452 N.W.2d 345, 347–48 (N.D.1990) (on appeal per se prejudice rule was applied in the context of a claim for ineffective assistance of counsel because the trial court failed to abide by the statutory rule requiring the court to advise the defendant of the mandatory minimum punishment, if any, and the maximum possible punishment; defendant was not informed at the plea of the mandatory minimum sentence required by the charge to which he pleaded guilty); *Hinton v. Hill*, 197 Or.App. 238, 105 P.3d 923, 926 (2005) (court applied per se prejudice rule in the context of a claim for

ineffective assistance of counsel because the trial court failed to advise the defendant of the maximum punishment required by the charges to which she pleaded guilty).

In the course of its opinion, the court in *Persinger* quoted with approval this passage from one of its earlier cases:

"[T]he decision to plead guilty to a charge could not be accepted as being knowingly and intelligently entered without an assurance that the accused fully comprehended the *maximum punishment that might be imposed for his conduct.* This information is obviously an integral part of the knowledge that should be possessed by one who is called upon to make the difficult decision whether to surrender his right to trial and to place himself at the mercy of the sentencing court. No civilized society could tolerate the waiver of such basic rights from one who was unaware of or misinformed as to such a critical fact."

615 A.2d at 1307 (citation omitted); *see also Henry v. Alabama,* 639 So.2d 583, 584 (Ala.Crim.App.1994) (holding that defendant's right to know the possible sentence he faces is absolute and the fact he was misinformed about the minimum and maximum sentence rendered his plea involuntary and the error was not harmless); *cf. Kleppinger v. Florida,* 884 So.2d 146, 148 (Fla.Dist.Ct.App.2004) ("A defendant is inherently prejudiced by his inability, due to his counsel's neglect, to make an informed decision whether to plea bargain."). This passage from *Persinger* suggests the Pennsylvania Supreme Court considers the failure to advise the defendant of the maximum possible punishment that might be imposed a structural defect in the plea process.

That brings me to *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), a decision upon which the majority heavily relies. In *Hill,* the defendant filed a federal habeas corpus action alleging that his guilty plea was involuntary because he was misinformed as to his parole eligibility. 474 U.S. at 54–55, 106 S.Ct. at 368, 88 L.Ed.2d at 207. He claimed he was told that if he pleaded guilty he would become eligible for parole after serving one-third of his sentence when in fact to become eligible for parole he was required to serve one-half of his sentence. *Id.* at 55, 106 S.Ct. at 368, 88 L.Ed.2d at 207. The question was whether the defendant was entitled to a hearing on his habeas corpus action. The majority concluded that the defendant failed to allege the type of prejudice necessary to satisfy the *Strickland* test. To satisfy that test, the court reasoned that the defendant had to allege in his habeas corpus action that had counsel correctly informed him about his parole eligibility date, he would not have pleaded guilty and would have insisted on going to trial. Because the defendant did not make such allegations, the Court concluded that his claim of ineffective assistance of counsel failed as a matter of law. As a result, he was not entitled to a hearing. *Id.* at 60, 106 S.Ct. at 371, 88 L.Ed.2d at 211.

It is interesting to note that the concurring opinion found no professional error— the first prong of the *Strickland* test. In support of this finding, the concurring opinion noted the record was clear that the defendant did not advise his attorney of a previous felony conviction which required defendant under state law to serve one-half rather than one-third of his sentence. *Id.* at 61–62, 106 S.Ct. at 371–72, 88 L.Ed.2d at 212 (White, J., concurring). Additionally, the concurring opinion found that the record supported sufficient facts to show there was a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and

would have insisted on going to trial. In sum, because the defendant did not allege facts showing professional error, the concurring opinion concluded the Court should deny the hearing for that reason. *Id.* at 62–63, 106 S.Ct. at 372–73, 88 L.Ed.2d at 212–13.

In any event, I think *Hill* is distinguishable. In *Hill,* the misinformation by the defendant's attorney was about parole eligibility rather than on the maximum possible punishment a defendant faces in pleading guilty. Parole eligibility is a collateral consequence of a plea. *Kinnersley v. State,* 494 N.W.2d 698, 700 (Iowa 1993), *overruled on other grounds by State v. Kress,* 636 N.W.2d 12, 20 (Iowa 2001). The maximum possible punishment a defendant faces in pleading guilty is a direct consequence of a plea. *Id.* A court need not inform the defendant of collateral consequences of a plea while it must inform the defendant of the direct consequences of a plea. *Id.* The majority fails to mention and explain away this distinction.

There is a vast difference between a court's failure to advise a defendant about a maximum possible punishment and an attorney's misinformation about parole eligibility. *Hill* and *Kress* are good examples. The defendant in *Hill* was facing a possible life sentence on charges of first-degree murder and theft. 474 U.S. at 53–54, 106 S.Ct. at 368, 88 L.Ed.2d at 207. His counsel negotiated a plea bargain under which the State would recommend concurrent prison sentences of thirty-five years for the murder charge and ten years for the theft charge. *Id.* at 54, 106 S.Ct. at 368, 88 L.Ed.2d at 207. The trial judge sentenced the defendant in accordance with the plea agreement. *Id.* Therefore, notwithstanding the attorney's alleged misinformation about parole eligibility, the defendant by pleading guilty at least had the chance to avoid a life sentence. So the defendant indeed had an incentive to plead guilty.

Contrast that situation with one in which the court misinforms or does not inform the defendant about the maximum possible punishment in violation of our rule and thereafter the defendant pleads guilty. That was exactly the situation in *Kress.* In *Kress,* the State charged the defendant with procurement of a prescription drug by forgery, which carried a ten-year sentence. 636 N.W.2d at 15, 17. There was no plea agreement, *id.* at 16, and therefore Kress had no incentive to plead guilty. In fact, the State also alleged that Kress had been previously convicted of a drug offense that enhanced the penalty. *Id.* at 16–18. Because of a previous drug conviction, Kress would have to serve one-third of the indeterminate sentence. *Id.* at 17–18. The court incorrectly informed Kress that the sentencing judge could waive the one-third mandatory minimum sentence requirement. *Id.* at 16. Kress then pleaded guilty. *Id.* Later, the district court imposed a ten-year indeterminate sentence and required Kress to serve at least one-third of her sentence. *Id.*

By pleading guilty, Kress gave up her constitutional right to a jury trial based on the incorrect information given at the plea. *Id.* at 22. Had Kress known the true facts, she had nothing to lose and everything to gain by going to trial because a jury may have found her not guilty. What possible reason would there have been to preserve Kress's claim of ineffective assistance of counsel on the prejudice prong of the *Strickland* test rather than just setting aside the plea and judgment of conviction and allowing her to plead anew? The result would have been the same in either case. It all boils down to this: "A guilty plea must represent the informed, self-determined choice of the defendant among practicable alternatives; a guilty plea can-

not be a conscious, informed choice if the accused" does not know of or is misinformed about the maximum punishment he or she faces by pleading guilty. *Hawkman v. Parratt,* 661 F.2d 1161, 1170 (8th Cir.1981).

The majority faults *Kress* because it fails to consider the *Hill* analysis. At the time we decided *Kress,* the State apparently did not believe *Hill* was applicable because it did not even mention *Hill* in its brief.

The other distinguishing factor is the structural defect aspect surrounding a failure to inform a defendant of the maximum possible punishment, which I mentioned earlier. In *Hack,* which was decided eleven years after *Hill,* we applied a per se prejudice rule in the context of an ineffective assistance of counsel claim arising out of a plea in which there was a lack of factual basis. In that case we did not even consider *Hill.* The Pennsylvania Supreme Court likewise decided *Persinger* after *Hill* and applied a per se prejudice rule in the context of an ineffective assistance of counsel claim arising out of a plea in which the maximum possible punishment was not mentioned. It too did not consider *Hill.*

Under the per se prejudice approach, I suggest the following. I would, as we did in *Kress,* 636 N.W.2d at 22, presume prejudice, vacate the judgment of sentence and conviction, and remand the case to allow the defendant to plead anew. This disposition, of course, would, in cases like the one before us, invalidate a plea bargain involving the dismissal of other charges. I would therefore on remand allow the State to reinstate the charges, if it so desired, and to file any additional charges supportable by the available evidence. In answer to the majority's second-bite-at-the-apple claim, allowing the State to reinstate charges and file additional charges should eliminate any incentive on the part of defendants to claim they were not advised of the maximum possible punishment when in fact they were so advised. These remedies are analogous to the remedies we apply in claims of ineffective assistance of counsel based on a lack of factual basis. Moreover, contrary to the majority's conclusion, these remedies preserve the integrity of the process while at the same time they serve the purpose and spirit of rule 2.8(2)(*b*).

Finally, the approach I suggest would conserve judicial resources by eliminating a postconviction hearing and an appeal in the event the defendant lost in the postconviction process. This makes far more sense than the approach the majority takes.

For all of these reasons, I would vacate the court of appeals decision; I would also vacate Straw's judgment of sentence and conviction and remand to allow him to plead anew. In addition, I would also allow the State on remand to reinstate the charges it dismissed as part of the plea bargain and to file any additional charges supportable by the available evidence.

WIGGINS, J., joins this dissent.