# IN THE COURT OF APPEALS OF IOWA

No. 4-015 / 13-0031
Filed February 19, 2014

STATE OF IOWA,
    Plaintiff-Appellee,

vs.

MATTHEW R. JANDREAU,
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Plymouth County, Jeffrey A. Neary, Judge.

Mathew Jandreau appeals his convictions and sentences for burglary in the first degree, kidnapping in the third degree, assault with intent to commit sexual abuse, attempted burglary in the second degree, operating a motor vehicle without the owner's consent, and criminal mischief. **CONVICTIONS AFFIRMED, SENTENCES VACATED IN PART, AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, Darin J. Raymond, County Attorney, for appellee.

Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**VOGEL, P.J.**

Mathew Jandreau appeals his convictions and sentences for burglary in the first degree, in violation of Iowa Code sections 713.1 and 713.3 (2012); kidnapping in the third degree, in violation of Iowa Code sections 710.1 and 710.4; assault with intent to commit sexual abuse, in violation of Iowa Code sections 709.1 and 709.11; attempted burglary in the second degree, in violation of Iowa Code sections 713.1 and 713.6; operating a motor vehicle without the owner's consent, in violation of Iowa Code section 714.7; and criminal mischief in the third degree, in violation of Iowa Code sections 716.1, 716.2, and 716.5(2). Jandreau asserts he lacked the specific intent necessary to commit these crimes due to his mental health issues and severe intoxication at the time of the commission of the crimes, and thus sufficient evidence does not support his convictions. Jandreau further argues that trial counsel was ineffective for failing to request an intoxication instruction and for failing to argue issues other than specific intent in his motion for judgment of acquittal. He also asserts the convictions of first-degree burglary and assault with intent to commit sexual abuse should merge.

We conclude sufficient evidence exists to support Jandreau's convictions, though we agree with Jandreau that the convictions for burglary in the first degree and assault with intent to commit sexual abuse should merge. We also preserve Jandreau's ineffective-assistance claim for possible postconviction relief proceedings. Therefore, we affirm his convictions, but vacate his sentence for assault with intent to commit sexual abuse and remand.

## I. Factual and Procedural Background

The jury could have found the following facts. On March 2, 2012, Jandreau went to three different residences. The first was the residence of Emily Palsma's parents, where Palsma was resting for the day. When Palsma looked out the window, she discovered her van was parked in a different spot than she had left it. Upon inspection, the cruise control lever had been broken off, the contents of the glove compartment strewn about, and Palsma's purse that she had left in the van was missing. The purse was later recovered at the third residence Jandreau went to that day.

The second residence he approached was that of LeAnn Waldo. She observed a man, who she later identified at trial as Jandreau, walk through her backyard carrying a black handbag with pink stars. Jandreau began kicking and hitting the back door. Waldo yelled out the window: "What the **** are you doing?" Panicked, she quickly sent her children upstairs and called 911. When she came back from making the call, Jandreau was gone.

The third residence Jandreau approached was that of Walter Kleinhesselink, who was not home at the time. However, A.F., Kleinhesselink's eleven-year-old granddaughter, was in the residence. She heard pounding on the front door, and when the door flew open, Jandreau entered the house. A.F. inquired whether Jandreau needed help from the police or hospital, and Jandreau replied "no." She picked up the telephone and began dialing 911 when Jandreau grabbed the phone and threw it. Jandreau then told A.F. he was "going to look around" the house and shoved her to the ground, thereby causing A.F. to hit her head on a flower pot. Jandreau repeatedly punched A.F. in the

face with a closed fist, pulled off her pajama bottoms and underwear, put his hand over her mouth to muffle her screams, and put her in a headlock.

Jandreau then dragged A.F. into the kitchen and tried to open the dishwasher—which appeared to A.F. as Jandreau's attempt to put A.F. in the dishwasher—but she kicked the door closed several times. He then attempted to push A.F. into a broom closet, and when that failed, forced her into the basement. Jandreau threw A.F. into a corner and pushed her down on the floor. A.F. continued her struggle and attempts to escape, prompting Jandreau to grab her leg and again begin punching her. Upon hearing people in the house, A.F. began to scream louder, as Jandreau punched her "harder and faster." Quickly, the police apprehended Jandreau, who had his pants down around his ankles but his boxer shorts still on. At trial, Jandreau testified he did not remember any of these events.

On March 12, 2012, Jandreau was charged with burglary in the first degree, kidnapping in the third degree, assault with intent to commit sexual abuse, attempted burglary in the second degree, operating a motor vehicle without the owner's consent, and criminal mischief in the third degree. A jury trial was held, and Jandreau was convicted on all counts. He was sentenced to serve twenty-five years on the first-degree burglary count, ten years on the kidnapping count, and five years on the assault count, all to run consecutively. He was also sentenced to five years on the attempted burglary count, two years on the operating without consent count, and two years on the criminal mischief count, to run concurrently with one another and with the other three counts. Jandreau appeals.

**II. Sufficiency of the Evidence**

Jandreau asserts he lacked the specific intent to commit any of these crimes due to his severe intoxication and mental health issues, given he suffers from schizophrenia, fetal alcohol syndrome, post traumatic stress disorder, and alcohol addiction.

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005). We view the record in the light most favorable to the non-moving party—here, the State—and make all legitimate inferences and presumptions that may be reasonably deduced from the evidence. *Id.* If substantial evidence supports the verdicts, we will affirm. *Id.* Evidence is substantial if it would convince a reasonable trier of fact the defendant is guilty beyond a reasonable doubt. *Id.*

Here, to prove Jandreau committed burglary in the first degree and attempted burglary in the second degree, the State must show Jandreau possessed the specific intent to commit a felony, theft, or assault when he broke into the Kleinhesselink residence and attempted to break into Waldo's residence. Iowa Code §§ 713.1, 713.2. To convict Jandreau of kidnapping in the third degree, the State was required to prove he had the specific intent to sexually abuse A.F., secretly confine A.F., or move her from one place to another. Iowa Code §§ 710.1, 710.4. To prove Jandreau committed assault with intent to commit sexual abuse, the State mush show Jandreau had the specific intent to sexually abuse A.F. when he assaulted her. Iowa Code § 709.11. Finally, to convict Jandreau of criminal mischief, the State was required to prove Jandreau had the specific intent to deface, alter, or destroy property. Iowa Code § 716.1.

The defense of diminished responsibility may be presented to negate the element of specific intent if the defendant suffers from a "mental defect" to the point where he is incapable of forming the specific intent to commit the crime. *State v. Anfinson*, 758 N.W.2d 496, 502 (Iowa 2008). Voluntary intoxication "neither excuses the person's act nor aggravates the person's guilt, but may be shown where it is relevant in proving the person's specific intent." Iowa Code § 701.5. The element of intent "is seldom capable of direct proof . . . and a trier of fact may infer intent from the normal consequences of one's actions." *State v. Evans*, 671 N.W.2d 720, 724–25 (Iowa 2003) (internal citations omitted).

With regard to the specific intent to commit a felony, theft, or assault for the attempted-burglary-in-the-second-degree charge, the jury was presented with sufficient evidence to sustain the finding of guilt. Jandreau violently pounded on Waldo's door with Palsma's stolen purse in hand. After leaving Waldo's residence, Jandreau entered the Kleinhesselink residence and brutally assaulted A.F. These actions are sufficient for the jury to infer Jandreau had the specific intent to commit a felony, theft, or assault as he threatened entry into Waldo's residence. Therefore, we affirm the conviction for attempted burglary in the second degree.

There is also sufficient evidence of specific intent to support the conviction of assault with intent to commit sexual abuse. In the seclusion of the basement, police officers found Jandreau with his pants around his ankles and A.F.'s pajama bottoms and underwear off. Though Jandreau presented evidence he is homosexual, the fact both A.F. and Jandreau's pants were off is enough for the jury to conclude Jandreau had the specific intent to commit sexual abuse. *See*

*State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992) (noting that "a sexual comment made by the defendant to the victim, touching in a sexual way, the removal or request to remove clothing, or some other act during the commission of the crime" is enough to infer the defendant had the specific intent to commit sexual abuse).

Though Jandreau only briefly argues he did not have the requisite intent to commit the other crimes of which he was convicted, the jury had ample evidence to conclude Jandreau possessed this specific intent. He acted with deliberation in entering Palsma's vehicle, stealing her purse, breaking the cruise control lever, and pawing through the glove compartment, as well as in his subsequent actions of damaging Waldo's back door and assaulting A.F. This is sufficient for the jury to infer Jandreau possessed the specific intent to commit burglary in the first degree, kidnapping, and criminal mischief, and therefore, we affirm Jandreau's convictions.

**III. Merger**

Jandreau next argues the convictions for burglary in the first degree and assault with intent to commit sexual abuse should merge. He relies on *State v. Anderson*, 565 N.W.2d 340, 344 (Iowa 1997), which held these crimes should merge. The State responds that the alternative submitted to the jury controls. Here, the jury was given the three alternatives of felony, theft, or assault on which they could rely in convicting Jandreau of first-degree burglary, and because it is unclear on which alternative the jury relied, the crimes should not merge.

We review an illegal sentence for correction of errors at law. *State v. Davis*, 544 N.W.2d 453, 455 (Iowa 1996).

Iowa Code section 701.9 states:

> No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

This section codifies the protection against cumulative punishment guaranteed by the Fifth Amendment of the United States Constitution. *See State v. Daniels*, 588 N.W.2d 682, 683 (Iowa 1998).

To determine whether one offense is a lesser included offense of another, we look first to the legal elements test for lesser included offenses. *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995). That test requires a comparison of the elements of both crimes to ascertain whether it is possible to commit the greater offense without also committing the lesser. *Id.* If the lesser offense contains an element not required for the greater offense, the lesser cannot be included in the greater. *Id.* If it is not possible to commit the greater offense without also committing the lesser, the convictions must be merged unless the legislature intended to impose multiple punishments. *Id.*

We determine the elements of the offense by the statute that defines it. *State v. Wales*, 325 N.W.2d 87, 88 (Iowa 1982). When a statute defines an offense alternatively, the alternative upon which the State relies controls. *State v. Webb*, 313 N.W.2d 550, 552 (Iowa 1981). Our supreme court has held, when the burglary charge is premised on the assault with intent to commit sexual

abuse charge, the crimes of burglary in the first degree and assault with intent to commit sexual abuse should merge. *Anderson*, 565 N.W.2d at 344.

Here, the trial information listed count one as:

Burglary in the First Degree, A Class B Felony, in violation of Iowa Code §§ 713.1 and 713.3 and that on or about March 2, 2012, in Plymouth County Iowa, the Defendant, MATTHEW ROLAND JANDREAU, with the intent to commit a felony, assault, or theft broke or entered an occupied structure (the home of Walter Kleinhesselink) not open to the public without any right, license, or privilege to do so.

The jury instruction for the burglary in the first degree charge read:

The State must prove all of the following elements of Burglary in the First Degree:
1. On or about the 2nd day of March, 2012, the defendant broke or entered the residence of Walter Kleinhesselink at [address].
2. The Kleinhesselink residence was an occupied structure as defined in instruction No. 26.
3. One or more persons were present in the occupied structure.
4. The defendant did not have permission or authority to enter the Kleinhesselink residence.
5. The Kleinhesselink residence was not open to the public.
6. The defendant did so with the specific intent to commit a felony, a theft or an assault.
7. During the burglary, he intentionally or recklessly inflicted bodily injury on [A.F.].

The jury instructions then defined assault and felony as used in the burglary instruction, though there was no instruction regarding theft. The instruction defining felony stated:

For the purposes of these instructions, the following crimes are felonies: Burglary in the First Degree, Attempted Burglary in the First Degree, Burglary in the Second Degree, Attempted Burglary in the Second Degree, Burglary in the Third Degree, Kidnapping in the Third Degree, Assault With the Intent to Commit Sexual Abuse.

The assault with intent to commit sexual abuse instruction read:

1. On or about the 2nd day of March, 2012, the defendant assaulted [A.F.].
2. The defendant did so with the specific intent to commit a sex act on [A.F.].
3. The defendant's assault caused bodily injury to [A.F.].

The State is correct that the jury instruction in this case regarding the specific intent element for the burglary charge differs from the instruction given in *Anderson*. In *Anderson*, the instruction stated the defendant entered the house "with the specific intent to commit the felony of sexual abuse," *id.*, whereas here, Jandreau entered the residence "with the specific intent to commit a felony, a theft or an assault."

However, there were no special interrogatories indicating on which alternative the jury relied—theft, felony, or assault—when convicting Jandreau of burglary in the first degree. "Where it is impossible to determine which alternative the jury used and one alternative requires merger, merger is required." *State v. Lambert*, 612 N.W.2d 810, 816 (Iowa 2000). Consequently, *Anderson*, which held the crimes of burglary in the first degree and assault with intent to commit sexual abuse should merge, still controls our analysis. *See Anderson*, 565 N.W.2d at 344 ("Applying the impossibility test to this case, we conclude the assault charge was a lesser-included offense of the burglary charge and merged with the burglary conviction."). Therefore, the crimes of burglary in the first degree and assault with intent to commit sexual abuse should merge, and we reverse this portion of the district court's sentence.

## IV. Ineffective Assistance

Jandreau's final argument asserts trial counsel was ineffective for failing to plead the defense of intoxication and failing to request a jury instruction on this

defense. He further claims counsel was ineffective for failing to argue issues other than specific intent in the motion for judgment of acquittal, such as the lack of evidence of a sexual assault or evidence Jandreau intended to commit a felony, theft, or assault in Waldo's residence.

A defendant may raise an ineffective-assistance claim on direct appeal if the record is adequate to address the claim. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). We may either decide the record is adequate and issue a ruling on the merits, or we may choose to preserve the claim for postconviction proceedings. *Id.* We review ineffective-assistance-of-counsel claims de novo. *Id.* To succeed on this claim, the defendant must show, first, that counsel breached an essential duty and, second, that he was prejudiced by counsel's failure. *Id.*

Here, there is an inadequate record to address Jandreau's ineffective-assistance arguments, considering counsel could explain a trial strategy as a basis for making these decisions. *See State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004) ("Ordinarily, ineffective assistance of counsel claims are best resolved by postconviction proceedings to enable a complete record to be developed and afford trial counsel an opportunity to respond to the claim."). Therefore, these claims are preserved for possible postconviction relief proceedings, where a more complete record may be established. *See* S*traw*, 709 N.W.2d at 133.

Having considered Jandreau's arguments on appeal, we affirm his convictions. However, because the convictions for burglary in the first degree and assault with intent to commit sexual abuse merge, we vacate the sentence

for assault.  We remand to the district court for entry of an order in accordance with this opinion.

**CONVICTIONS AFFIRMED, SENTENCES VACATED IN PART, AND REMANDED.**