# IN THE COURT OF APPEALS OF IOWA

No. 14-0123
Filed November 13, 2014

**ANTHONY LAWSON,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Anthony Lawson appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Katie Fiala, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kimberly Griffith, Assistant County Attorney, for appellee State.

Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VOGEL, P.J.**

Anthony Lawson appeals the district court's denial of his application for postconviction relief. Lawson asserts trial counsel was ineffective for failing to challenge the voluntariness of his guilty plea and for failing to pursue a motion to suppress. He further argues the postconviction court applied the incorrect legal analysis when adjudicating his claims and, to the extent error was not preserved, postconviction counsel was ineffective for failing to assert the ineffective-assistance-of-trial-counsel claims under the correct standard. We conclude that, though Lawson did not preserve error regarding his claim that the district court used the improper standard, Lawson nonetheless failed to carry his burden showing postconviction counsel was ineffective for failing to do so. Consequently, we affirm the district court's denial of Lawson's application for postconviction relief.

On December 9, 2011, Lawson attacked his live-in girlfriend with a knife while two minor children were present in the home. This was the second time he physically assaulted the victim that day. The second attack resulted in severe lacerations to the victim's wrists and chest, as well as injuries to the areas of her body where he kicked her. Lawson was charged by two trial informations with numerous offenses, which included one class "C" and one class "D" felony, as well as six aggravated and two serious misdemeanors. On February 29, 2012, Lawson pleaded guilty to pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), to willful injury, going armed with intent, first-degree harassment, domestic abuse assault by use of a dangerous weapon, two counts of child endangerment, domestic abuse assault with intent to cause serious injury, and

domestic abuse assault causing bodily injury. The court imposed a sentence that resulted in a total of ten years from the pleas stemming from the first trial information and two years from the second trial information, the terms to run consecutively. Lawson did not directly appeal his convictions and sentence.

On August 26, 2013, Lawson filed a pro se application for postconviction relief, which alleged: (1) the police conducted an illegal search and seizure of the victim's home; (2) trial counsel failed to file pretrial motions; (3) no factual basis existed supporting his *Alford* plea; and (4) various convictions should be merged. On October 10, 2013, postconviction counsel amended Lawson's application, claiming that trial counsel was ineffective because: (1) counsel withdrew a pending motion to suppress; (2) no deposition was taken of the victim, who made inconsistent statements; (3) counsel was too involved in another murder case; and (4) counsel coerced Lawson into taking the plea. Following a hearing, the district court denied Lawson's application, and Lawson appeals.

We review ineffective-assistance-of-counsel claims de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). To succeed on this claim, the defendant must show, first, that counsel breached an essential duty, and, second, that he was prejudiced by counsel's failure. *Id.* The claimant bears the burden of showing both prongs by a preponderance of the evidence. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). To the extent we are addressing whether the district court employed the proper legal standard, we review those claims for correction of errors at law. *See DeVoss v. State*, 648 N.W.2d 56, 60 (Iowa 2002).

Lawson argues the district court's ruling indicated it did not consider whether "trial counsel breached a duty in advance of the guilty plea that rendered the plea involuntary or unintelligent," in violation of *Castro v. State*, 795 N.W.2d 789, 793 (Iowa 2011). *See also State v. Carroll*, 767 N.W.2d 638, 642 (Iowa 2009) (holding the applicant is required to show trial counsel was ineffective before the plea is entered, and the ineffective assistance rendered the plea involuntary and unintelligent). Specifically, Lawson claims that if the court had properly applied *Castro*, it would have concluded the pre-plea actions of trial counsel rendered the plea involuntary and unintelligent because Lawson was "coerced" into pleading guilty and because trial counsel withdrew the motion to suppress. Lawson then argues in the alternative that if we conclude error was not preserved, postconviction counsel was ineffective for failing to raise the issues.

We agree with the State that, because Lawson did not present the improper-standard argument during the hearing or in a post-trial motion, he did not preserve this claim for appellate review. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) (noting that the party must raise the issue before the district court, which must then consider and rule on the issue, in order for error to be preserved). However, Lawson has failed to carry his burden showing postconviction counsel was ineffective for failing to raise the arguments he now presents on appeal.

Lawson is correct in his assertion that if trial counsel's performance is ineffective to the extent it resulted in the plea being involuntary and unintelligent, "all categories of ineffective-assistance-of-counsel claims can potentially survive

a guilty plea." *Carroll*, 767 N.W.2d at 644. However, to demonstrate prejudice, Lawson must show he would not have pleaded guilty but for counsel's ineffectiveness. *See id.* At the postconviction hearing, when asked whether she believed Lawson understood the nature of the plea and whether he was facing eighty years, trial counsel testified that:

> I don't remember how much time he was actually looking at. I know there were discussions regarding whether or not he would be charged with attempted murder. I am not sure where he got that number 80, but, no I fully believe he knew what he was doing and was certainly competent to make the decision. We repeatedly had discussions on and off the record that day to make sure that everything was very clear to him. Pleading guilty and accepting that plea was, in my estimation, what he wanted.

Trial counsel further testified regarding Lawson's state of mind in the following exchange:

> Q: And so who is the—who is the one that made the decision to plead guilty? A: That was completely Mr. Lawson's decision.
> Q: You had filed a motion to suppress also? A: Correct.
> Q: You had withdrawn that when he decided he wanted to plead? A: Correct.
> Q: And then he had sent you a letter asking that you not be his attorney anymore or expressing some feelings in that regard? A: I can't—let me look at this here. Yes. He actually was a fairly prolific writer and wrote several letters expressing various degrees of displeasure over a number of things not related to my representation, but many things and he had indicated that he wanted new counsel in early January I believe and we addressed that when I visited with him. He decided he didn't want to pursue that. It's my understanding he never wrote to the court requesting new counsel. But I brought it up at the time of plea and sentence just to make sure that he had the opportunity to talk about it at that time if he—that was still something he wanted to do. That was about, probably close to two months later.[1]

---

[1] On the record the district court noted it found trial counsel's testimony to be more credible than that of Lawson's.

Lawson also presented testimony during the hearing. He complained of trial counsel's performance in the following manner:

> She had said that I agreed and was happy with everything. I wasn't. When we entered the courtroom, she—I was like, I just want to go to the speedy trial. She is like, Well, I am telling you if you don't plead on this, they're not going to give you another deal. You are going to get 80-some years. I am like, I didn't do it. [The victim] got jumped. She's like, Well, if you don't do it, they're going to—I thought the speedy trial had—had a certain time and then I go to the court date. She said they was [sic] going to cancel that and make another court at a time. I was like I thought you couldn't cancel the speedy trial. She said yeah, they can. She is like, I'm telling you this is the last deal they are going to give you and if I was you I would go with that. I didn't want to do it. I kept on hesitating. I looked at the judge like what should I do? He looking at me and I told her that I wasn't happy on what she was doing. I even wrote her a letter saying that I wanted her to go ahead with the property, to get everything submitted, for the warrantless entry. She wrote me a letter saying that they're not going to give me that because of what was said and everything. I never sat up there and told her that I did that. That I did the crime. Not once. She just said that I told her that. I never told her I did that. Ever. I don't believe she sat and—I told her that I stabbed that girl and beat her up. I never not once told her that.

This testimony does not support Lawson's argument he was coerced into the plea, and, other than Lawson's bare assertion that he was unhappy with counsel's performance, no other evidence shows Lawson's plea was entered into involuntarily or unintelligently. Rather, the transcript of the plea hearing demonstrates Lawson understood and accepted the consequences of his guilty plea. Trial counsel's testimony at the postconviction hearing also supported this conclusion. Specifically, after a lengthy discussion regarding the plea agreement and likely sentence to be imposed, as well as the role the parole board would serve, the following record was made at the plea hearing:

> The Court: All right. Are you cleared up now after talking to [trial counsel]? Defendant: Yeah.

The Court: And do you want to accept the plea offer that's been offered by the state? Defendant: Yeah.

The Court: Has anyone made any threats to you or promises to you to get you to come in here and plead guilty? Defendant: No.

The Court: Are you doing this voluntarily and of your own free will? Defendant: Yeah.

The Court: Are you doing this because you're satisfied that it is in your best interests to do this? Defendant: Yeah.

. . . .

The Court: And do you agree that if your cases were to go to trial that there's a strong likelihood that you would be convicted? Defendant: Yeah.

The Court: And then are you balancing that, the risks associated with going to trial against the benefits that you'd get under this agreement? Defendant: Right.

. . . .

The Court: Are you satisfied with the services [your attorney] has provided for you? Defendant: Yes.

Given this record, we conclude postconviction counsel was not ineffective for failing to further Lawson's claim that he was coerced into taking the plea within the *Castro* framework.

To the extent Lawson argues postconviction counsel was ineffective for failing to contend the filing of a motion to suppress would have resulted in Lawson not pleading guilty, that argument, if properly presented, would have been meritless as well. Lawson offered no evidence—other than a lone assertion that counsel was ineffective—showing he would not have pleaded guilty but for trial counsel's failure to pursue a motion to suppress. Trial counsel specifically testified she filed a motion to suppress, which she only withdrew due to Lawson's decision to plead guilty. It is also apparent from Lawson's testimony that counsel believed the motion to suppress would have either been denied or

would not have dramatically affected Lawson's case.[2]  Allegations of prejudice, without more, do not satisfy the applicant's burden to show both ineffective-assistance prongs by a preponderance of the evidence.  *See Ledezma*, 626 N.W.2d at 142.  Because any assertion that trial counsel was ineffective based on her withdrawing the motion to suppress would have failed, postconviction counsel was not ineffective for failing to expand this argument within the context of *Castro*.[3]

Additionally, to the extent Lawson challenges the district court's denial of his other claims that do not directly relate to his guilty plea, the court properly concluded it could not address the merits of these claims.  *See State v. Burgess*, 639 N.W.2d 564, 567 (Iowa 2001) (holding that "[a] guilty plea freely and voluntarily entered waives all defenses and objections, including constitutional guarantees").  Consequently, the district court correctly denied Lawson's application for postconviction relief, and we affirm.

**AFFIRMED.**

---

[2] This opinion is likely due to the community caretaking exception to the warrant requirement, as, given the officer's observation of the victim's severe wounds and knowing there were children in the residence, the motion to suppress would likely have been denied.  *See State v. Kern*, 831 N.W.2d 149, 173 (Iowa 2013) (noting that the community caretaking exception to the warrant requirement occurs when the officer is actually motivated to render assistance because of a perceived threat, and when a reasonable person would have believed an emergency existed).  Additionally, regardless of whether or not the motion would have resulted in a favorable ruling, Lawson would still have had to contend with the children's statements they saw him attack their mother.

[3] When presented with Lawson's motion-to-suppress argument, the district court stated: "There was never a trial, so there was never any evidence introduced, so none of that really matters, does it?  This is going to turn on whether he wisely pled guilty or not."