# IN THE COURT OF APPEALS OF IOWA

No. 13-1762
Filed February 11, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOSEPH KEITH PITTMAN,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Jeffrey L. Poulson, Judge.

Joseph Pittman appeals from his convictions and sentences for theft in the third degree and debit or credit card fraud as an habitual offender. **CONVICTIONS AFFIRMED, SENTENCE FOR CREDIT CARD FRAUD VACATED, AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney General, Patrick Jennings, County Attorney, and Jill Esteves, Assistant County Attorney, for appellee.

Heard by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, P.J.**

Joseph Pittman appeals from his convictions and sentences for theft in the third degree and debit or credit card fraud as an habitual offender. He asserts trial counsel was ineffective for failing to object to the entry of the mistake-of-fact instruction, which stated that Pittman must have had a reasonable belief that his use of the credit card was authorized. He also claims trial counsel was ineffective for failing to argue Pittman's conduct did not meet the statutory definition of theft by deception in the motion for judgment of acquittal. Pittman challenges his sentences as well, arguing the district court erred when imposing separate terms of incarceration with regard to his two convictions; he asserts he was convicted of both crimes based on the same transactions and, therefore, these sentences result in a cumulative punishment. His final argument claims the sentence for the credit card fraud conviction was illegal because the district court imposed a class "D" felony and an habitual offender enhancement, though the jury verdict only established an aggravated misdemeanor of the crime.

Regarding Pittman's claim counsel was ineffective for failing to challenge the jury instruction defining mistake of fact, we conclude the instruction was a proper statement of the law and, therefore, counsel had no duty to object. Furthermore, Pittman's unauthorized use of the credit card constituted theft by deception, and therefore, trial counsel was not ineffective for failing to raise this argument in the motion for judgment of acquittal. With respect to Pittman's claim the district court imposed an illegal sentence for his theft-by-deception conviction, we conclude the legislature did not intend to prohibit cumulative punishments for the crimes of theft by deception and theft by credit card and, therefore, Pittman's

argument is meritless. However, no factual basis supported the imposition of a Class "D" penalty for the theft-by-credit-card conviction, given the jury did not find the goods were valued at more than $1000. The district court thus imposed an illegal sentence on this count. Consequently, we affirm Pittman's convictions and sentence for the theft by deception count; however, we vacate the sentence for the theft-by-credit-card conviction and remand for resentencing.

**I. Factual and Procedural Background**

Based upon the evidence presented at trial, the jury could have found the following facts. On October 4, 2012, Sylvia Elerick used her debit card to purchase gas and then drove to the apartment of her friend, Ann Brocken. The apartment complex was located in Jefferson, South Dakota. The mother of Pittman's child, Tabatha Zant, lived in the apartment adjacent to Brocken's. The debit card fell out of Elerick's pocket, and Zant later found the card in the apartment parking lot.

Elerick discovered her debit card was missing on October 5. She went to Security National Bank to report the incident, and the bank discovered that a total of $1338 in unauthorized purchases had been made with the card on October 4 and 5. Elerick reported the crime to the police. Upon investigation, officers discovered the following purchases had been made: on October 4, a 6:57 p.m. purchase at the Tobacco Hut totaling $31.16; a 7:46 p.m. purchase at Kmart totaling $41.30; an 8:02 p.m. purchase at Pro Image totaling $117.64; an 8:07 p.m. purchase at the Foot Locker totaling $85.59; an 8:14 p.m. purchase at Champs totaling $80.45; an 8:24 p.m. purchase at the Finish Line for $163.67; an 8:51 p.m. purchase at Walmart totaling $64.69; a 9:03 p.m. purchase at KFC

totaling $21.81; and a 10:52 p.m. purchase at Select Mart totaling $24.46. A purchase was also attempted at Game Stop, but the debit card was declined. The following purchases were completed on October 5: an 11:11 a.m. purchase at McDonald's totaling $8.10; an 11:42 a.m. purchase at Long Lines Wireless totaling $44.66; and a 12:14 p.m. purchase at Game Stop for $286.41.

The investigation revealed that Zant had made the purchases at Tobacco Hut, Kmart, Pro Image, Foot Locker, Champs, Finish Line, and Walmart on October 4. The purchase at Pro Image consisted of hats for Pittman that he had chosen earlier in the day.[1] After Zant completed these purchases, Pittman met Zant at Walmart and the two drove to KFC, where they ate. Zant then gave the card to Pittman, stating that he should buy the things he needed and return it to her the next day.

After acquiring the card, Pittman made the purchases at Select Mart, McDonald's, Game Stop, and Long Lines Wireless. The transaction at Long Lines Wireless was to pay the phone bill of Christina Jacobs, Pittman's current paramour. The purchase at Game Stop was for a gaming console that did not work, so later that day Pittman exchanged it for a cheaper version and received the difference in price in cash.

On November 1, 2012, Sioux City Police Detective Jacob Hoogendyk interviewed Zant. Zant stated that a friend, Sarah Moore, who owed her money, had given Zant the debit card to pay back the debt;[2] however, because Moore had poor credit, the card was in her aunt's name and was linked to her account,

---

[1] In Zant's deposition, taken June 2013, she stated Pittman had waited outside most of the stores while she made the purchases.
[2] Zant claimed Moore had illegally sold Zant's car by forging her name on the title.

but Moore funded the account. At trial, Zant testified that this was what she had told Pittman when she gave him the card. However, in another interview on November 21, Zant informed police that she had in fact found the debit card in the parking lot of her apartment complex. She then stated she had destroyed the card, and only after that did she inform Pittman she had lied about the debit card belonging to Moore.

Detective Hoogendyk interviewed Pittman on November 19. The interview was recorded and admitted at trial. Pittman acknowledged he had used the debit card but stated that he did so in reliance on Zant's assertion that Moore had given her the debit card to pay her back for the stolen car. Thus, Pittman stated he believed he had been authorized to use it. This was also the defense he asserted at trial.

Pittman was charged on December 11, 2012, with theft in the second degree. The trial information was later amended to add the habitual offender enhancement and a charge of debit or credit card fraud as an habitual offender. A jury trial was held from September 3 to September 5, 2013, at which the State argued that Pittman himself used the debit card knowing it was illegally obtained and, alternatively, that Pittman aided and abetted Zant in committing these crimes. On September 5, the jury returned a guilty verdict to the crimes of theft by deception for property valued at more than $500 but less than $1000, and debit or credit card fraud involving property or services valued at more than $500.

The district court entered judgment against Pittman for theft in the third degree, an aggravated misdemeanor, in violation of Iowa Code sections 714.1, 714.2(3), 703.1, and 703.2 (2011), and debit or credit card fraud as an habitual

offender, a class "D" felony, in violation of Iowa Code sections 701.1, 703.2, and 715A.6(2).[3]  The court sentenced Pittman to a term of incarceration not to exceed two years on the theft conviction, and a term of fifteen years, suspended, for the credit card fraud conviction, with the terms to run consecutively.  Pittman appeals.

## II. Standard of Review

We review ineffective-assistance-of-counsel claims de novo.  *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).  When the ineffective-assistance claim is made on direct appeal, we may either decide the record is adequate and issue a ruling on the merits, or we may choose to preserve the claim for possible postconviction-relief proceedings.  *Id.*  To succeed on this claim, the defendant must show, first, that counsel breached an essential duty and, second, that he was prejudiced by counsel's failure.  *Id.*  When the claim lacks prejudice, we may decide the issue on that ground alone.  *Ledezma v. State*, 626 N.W.2d 134, 144 (Iowa 2001).

To the extent we are reviewing Pittman's claim of an illegal sentence—which can be raised at any time—we review this constitutional claim de novo. *See State v. Bruegger*, 773 N.W.2d 862, 868 (Iowa 2009).

---

[3] The judgment itself stated Pittman was guilty of debit or credit card fraud as an habitual offender, in violation of Iowa Code sections 701.1, 703.2, and 715A.2(2) (as opposed to section 715A.6(2), which lists the penalties for credit card fraud).  However, in the sentencing hearing, the district court stated: "It is the judgment of this Court that the defendant stands convicted and is guilty of . . . debit or credit card fraud as an habitual offender as set forth in Count[] . . . 2 . . . of the trial information."  The second count in the amended trial information charged Pittman with credit card fraud, as an habitual offender, in violation of Iowa Code sections 701.1, 703.2, 715A.6(2), 902.8, and 902.9. Consequently, it appears the sentencing order contained a typographical error with regard to the penalty code section for credit card fraud, and so we will proceed with the assumption Pittman was sentenced under the proper statute.

**III. Jury Instruction**

Pittman first argues trial counsel was ineffective for failing to object to the jury instruction entitled "Mistake of Fact," asserting it was an incorrect statement of the law. Specifically, he claims the portion stating his mistake of fact had to be "reasonable" to be a complete defense placed a lesser burden on the State to prove the "knowledge" element of the two charges. This, he asserts, is not a proper application of the law.[4] The State counters that the instruction is a correct statement of the law, and because the burden was on the State to counter Pittman's mistake-of-fact defense, the requirement that the mistake be reasonable did not lessen its burden of proving the knowledge requirement.

> Jury instruction eighteen states:
>
> The defendant claims that at the time of the acts in question, he was acting under a mistake of fact as to whether the use of the debit or credit card was authorized by Sylvia Jean Elerick and whether he was helping to accomplish a theft. When an act or acts are committed because of a mistake of fact, the mistake of fact must be because of a good faith reasonable belief by the defendant, acting as a reasonably careful person under similar circumstances.
> The defendant must inquire or determine what is true when to do so would be reasonable under the circumstances.
> The State has the burden of proving the defendant was not acting under a mistake of fact as it applies to the question of whether the defendant believed that the use of the debit or credit card was authorized by Sylvia Jean Elerick and whether the defendant was helping to accomplish a theft.

---

[4] In a notice of additional authorities, Pittman cited *Commonwealth v. Liebenow*, 20 N.E.3d 242, 250–52 (Mass. 2014), which held that the mistake of fact defense did not require proof that the mistake was objectively reasonable to constitute a complete defense to the crime of theft. Upon review of the case and the applicable statutes, we note the law of Massachusetts differs from that of Iowa, in that our jurisprudence requires the mistake of fact be reasonable to constitute a complete defense to charges relating to theft. *See State v. Freeman*, 267 N.W.2d 69, 70 (Iowa 1978) ("[F]or a mistake of fact to form a defense, the mistake must be reasonable and the act to be justified must be taken under a bona fide mistaken belief."). Consequently, we decline to consider *Liebenow* persuasive authority.

The crimes of which Pittman was convicted require the defendant to use the debit card while knowing this use was unauthorized. *See* Iowa Code §§ 702.9(1) (defining deception as an act in which the defendant is engaged while knowing the activity is unauthorized), 715A.6 (defining the fraudulent use of a debit or credit card as a crime that must be committed while knowing the use was unauthorized). The State and Pittman agree the jury instructions properly defined the intent element of the crimes. Pittman, however, argues instruction eighteen required the jury to assume that, even if he did not *actually* know the use was unauthorized, if a reasonable person were to know the use was unauthorized, he would still be guilty of the crimes because he *should* have known about the status of the debit card.

"Mistake of fact is a defense to a crime of scienter or criminal intent only where the mistake precludes the existence of the mental state necessary to commit the crime." *State v. Freeman*, 450 N.W.2d 826, 828 (Iowa 1990) (citing 21 Am. Jur. 2d *Criminal Law* § 141 (1981) ("[A]t common law an honest and reasonable belief in the existence of circumstances which, if true, would have made the act done innocent, is a good defense.")). Once the issue of mistake of fact is raised, the State has the burden of negating the defense. *Freeman*, 267 N.W.2d at 70–71. Therefore, the knowledge element for the crime of theft is a separate issue—with a separate burden of proof—as compared to the State's need to negate Pittman's mistake-of-fact defense. *See id.*; *see also* 21 Am. Jur. 2d *Criminal Law* § 153, at 262 (2008).

Pittman is correct in his assertion the crimes of theft by deception and fraudulent use of a credit card require that the unauthorized use be knowing and

that no "reasonable" requirement is embedded in the statutes. *See* Iowa Code §§ 702.9(1), 715A.6. However, it is well established a mistake of fact must be reasonable for it to constitute a complete defense to the intent element of the crime with which the defendant is charged. *See Freeman*, 267 N.W.2d at 70 ("[F]or a mistake of fact to form a defense, the mistake must be reasonable and the act to be justified must be taken under a bona fide mistaken belief."); Iowa Crim. Jury Instructions 200.39 (2004). Considering the knowledge element of the theft crimes is a distinct issue from the mistake-of-fact defense, jury instruction eighteen was a proper recitation of the law. *See Freeman*, 261 N.W.2d at 71.

Furthermore, we review jury instructions in their totality. *State v. Becker*, 818 N.W.2d 135, 141 (Iowa 2012). Pursuant to all of the jury instructions presented here—which included the recitation of the elements of each crime— the State bore the burden of proving both the knowledge element and negating Pittman's defense. Therefore, these instructions were a proper recitation of the law. Consequently, trial counsel had no duty to object to instruction eighteen, and Pittman's ineffective-assistance claim is without merit. *See State v. Smothers*, 590 N.W.2d 721, 724 (Iowa 1999) (holding counsel has no duty to object to a meritless issue).

## IV. Whether the Unauthorized Use of a Credit Card Constitutes Theft by Deception

Pittman next claims trial counsel was ineffective for failing to argue in the motion for judgment of acquittal that Pittman's actions did not constitute theft by deception. Specifically, he asserts the purchase of items from the store using an unauthorized debit card did not constitute a "theft," because the store was paid

for the purchase. Moreover, pursuant to the jury instructions, the "deceptive" act was presenting the debit card to the stores, which were not harmed by the criminal act; rather, the debit card company was the ultimate victim of the crime. Consequently, this use of the card did not constitute theft by deception within the meaning of the statute because, he argues, there was neither a "theft" nor a "deception," as contemplated by Iowa Code section 714.1(3).

The State counters that the language of this statute is broad enough to encompass Pittman's conduct, given that it states the defendant need only take the "property of another" to be guilty of theft by deception. Thus, the identity of the victim—whether it was the store, the card holder, or the debit card company—is not an element of the crime; rather, the property must simply belong to "another." Furthermore, it contends the legislature's creation of the crime theft by credit card fraud did not impliedly substitute the theft by deception statute, so that this section cannot be used to charge the defendant when he engages in the unauthorized use of a debit card.

Jury instruction twelve, which defined the theft-by-deception crime, noted the State was required to prove:

> 1. On or about October 4 and 5, 2012, the defendant either:
> a. obtained property or services from several businesses, or
> b. aided and abetted Tabetha Zant, who obtained property and services from several businesses.
> 2. The defendant either:
> a. Knowingly deceived the businesses by presenting a debit or credit card, thereby creating or confirming the store clerks' belief or impression that the defendant was authorized to use the debit or credit card, while knowing that his use of the debit or credit card was unauthorized;
> b. Knowingly aided and abetted Tabetha Zant, who presented a debit or credit card, thereby creating or confirming the store clerks' belief or impression that Tabetha Zant was authorized

to use the debit or credit card, while knowing that Tabetha Zant's use of the debit or credit card was unauthorized.

3. The defendant or Tabetha Zant obtained the transfer of possession, control, or ownership of property or services from the businesses by deception.

This instruction reflects the elements of the crime set forth in the statute. Pursuant to section 714.1(3), to convict Pittman of the crime of theft by deception, the State had to prove he "[o]btain[ed] the labor or services of another, or a transfer of possession, control, or ownership of the property of another, or the beneficial use of the property of another, by deception." Iowa Code § 714.1(3). Deception is defined as "knowingly . . . [c]reating or confirming another's belief or impression as to the existence or nonexistence of a fact or condition which is false and which the actor does not believe to be true." Iowa Code § 702.9(1). These statutes are based on the Model Penal Code, which also defines theft by deception as the taking of the "property of another" by means of deception. *See* Model Penal Code § 223.3 (2001); *see also State v. Hogrefe*, 557 N.W2d 871, 877 (Iowa 1996) ("In enacting section 714.1(3), theft by deception, the legislature—for the most part—followed the lead of the American Law Institute Model Penal Code (1980) in its definition of theft by deception. So the Model Penal Code commentaries on the definition are persuasive authority in our interpretation of our own theft by deception statute.").

A comment on the Model Penal Code has opined:

The usual three-party arrangement is that the creditor collects from the credit-card issuer, who assumes the risk of misuse of credit cards so as to encourage creditors to honor cards promptly. Under these circumstances it is difficult to convict the misuser of a credit card of the crime of false pretenses, for the person deceived (the creditor) loses nothing, and the person who loses something (the issuer) is not the one deceived.

Wayne R. LaFave, 3 *Substantive Criminal Law* § 19.7 (2d ed. 2011).

However, several of our sister states—those with statutes identical to ours—allow the unauthorized use of a credit card to constitute theft by deception. *See State v. Hager*, 691 A.2d 1191, 1195 (Me. 1996) (holding substantial evidence supported the defendant's conviction for theft by deception after he used a stolen credit card to purchase various items); *State v. Mann*, 583 A.2d 372, 375 (N.J. Super. Ct. App. Div. 1990) (noting it was uncontested that the defendant's use of a stolen credit to purchase a VCR qualified as a crime under the theft by deception statute); *State v. Turner*, No. 2001 CA 79, 2002 WL 506761, at *1 (Ohio Ct. App. Apr. 5, 2002) (noting the defendant had been convicted of theft by deception after charging his girlfriend's credit card for purchases when not authorized to do so).

We find the holdings of these sister states persuasive. This conclusion is also consistent with the broad language of our statute, which does not require the identity of the victim to be an element of the crime; nor does theft by deception require that the theft be perpetrated on the owner of the property. *See* Iowa Code § 714.1(3) (stating theft by deception occurs when the defendant "obtains the . . . property of another . . . by deception"). Furthermore, while our case law has yet to address the issue of whether a defendant can commit the crime of theft by deception by using a stolen debit card, our supreme court has noted that theft by deception is a "catch-all crime to encompass the full and ever changing varieties of deception." *Hogrefe*, 557 N.W.2d at 878. With the crime of theft by deception being a "catch-all," combined with the broad language of the statute itself, we conclude the unauthorized use of a debit card falls within section

714.1(3)'s purview. *See id.* Consequently, Pittman's use of Elerick's debit card to purchase various items constituted the crime of theft by deception; as such, counsel was not ineffective for failing to raise the issue of whether Pittman's conduct satisfied the elements of theft by deception in the motion for judgment of acquittal.

## V. Cumulative Sentences

Pittman next asserts the district court entered an illegal sentence when it sentenced him to a term of incarceration for the theft-by-deception conviction. He claims that this conviction as well as the credit card fraud conviction was premised on the same underlying transactions and, consequently, the district court entered a cumulative punishment. Alternatively, Pittman requests we consider this claim in an ineffective-assistance-of-counsel framework. The State counters the legislature did not intend to prohibit separate punishments for a conviction of theft by deception and a credit card fraud conviction. Consequently, trial counsel was not ineffective for failing to raise the illegal-sentence argument before the district court.

Pittman concedes that credit card fraud and theft by deception are two distinct crimes that do not satisfy the *Blockburger* impossibility test. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) (describing the impossibility test as "whether each provision requires proof of a fact which the other does not"). Moreover, the plain language of the statutes do not preclude cumulative punishment, that is, nowhere in the Code does it prohibit the imposition of a sentence for each conviction, even when based on the same set of transactions. *See* Iowa Code §§ 714.1(3), 715A.6(1); *see also State v.*

*Shearon*, 660 N.W.2d 52, 55–56 (Iowa 2003) (holding that legislative intent can be inferred, in part, from whether the crimes satisfy the impossibility test).

The crimes also classify the penalties differently. *See* Iowa Code §§ 714.2, 715A.6(2). For example, theft by deception is a serious misdemeanor when the defendant acquires goods valued at more than $200 but less than $500, whereas a defendant commits an aggravated misdemeanor when using a credit card for goods valued at less than $1000. *Compare id.* §§ 714.2(4), with *id.* 715A.6(2)(c). Thus, not only are the elements of the crimes different—as demonstrated by the fact they cannot satisfy the impossibility test—but the statutes classify the penalties differently. This indicates the legislature did not intend to prohibit cumulative punishments for these crimes, even when the underlying conduct for the convictions is the same.

However, Pittman relies on a comment to the Model Penal Code, which states that the crime of theft by credit card was "necessitated by the possibility that the legal arrangements surrounding the issue of credit cards may not make it possible to prosecute offenders for theft by deception." Model Penal Code § 224.1 Explanatory Note for section 22431-224.14 (2001). Pittman is correct in his assertion that these comments are persuasive authority. *See Hogrefe*, 557 N.W.2d at 878. Nonetheless, we do not agree this comment applies. As stated above, Pittman concedes the crimes do not satisfy the *Blockburger* impossibility test, which indicates they do not merge, and therefore the imposition of a penalty for each conviction does not violate due process. *See Shearon*, 660 N.W.2d at 55 (noting a sentence is only illegal when it is imposed for the same crime for which the defendant was already convicted and punished). Additionally, the plain

language of the statutes indicates the crimes contain separate elements with different penalties, and so we cannot conclude the legislature intended to prohibit cumulative punishments with respect to the crimes of theft by deception and theft by credit card. *See Horsman v. Wahl*, 551 N.W.2d 619, 620–21 (Iowa 1996) ("If the statutory language is plain and the meaning is clear, we do not search for the legislative intent beyond the express terms of the statute."). Consequently, the district court did not enter an illegal sentence when imposing a term of incarceration for the theft-by-deception conviction, nor was trial counsel ineffective for failing to raise a meritless issue.

**VI. Imposition of Punishment for Class "D" Felony**

Pittman's final argument asserts the district court imposed an illegal sentence in entering judgment for a class "D" felony when the jury verdict did not support this charge. Specifically, the jury found the goods secured by the credit card fraud were valued at more than $500; however, because Iowa Code section 715A.6(2)(c) states that the crime is an aggravated misdemeanor if the goods are less than $1000 and the jury did not make this finding, the court erred when it sentenced Pittman to a class "D" felony. Furthermore, given the habitual offender enhancement can only be imposed when attached to a class "D" felony, Pittman asserts the court also erred when applying the enhancement.

An illegal sentence is imposed if the penalty is unauthorized by statute. *State v. Wade*, 757 N.W.2d 618, 628 (Iowa 2008). Additionally, a sentence cannot be imposed where there is no factual basis to support the statutory penalty—for example, if the underlying conduct only supports a serious misdemeanor conviction, the defendant cannot be sentenced to an aggravated

misdemeanor. *See State v. Austin*, 503 N.W.2d 604, 605–06 (Iowa 1993) (holding that, because the defendant stole $167.88 worth of items, she could not be sentenced to an aggravated misdemeanor; rather, because Iowa Code section 714.2(4) (1993) states it is a serious misdemeanor when the goods are valued at more than $100 but less than $500, the district court could only impose a sentence in line with the serious misdemeanor penalties).

Pursuant to Iowa Code section 715A.6(2) (2011), a defendant is guilty of a class "D" felony if the goods obtained through the fraudulent use of a credit card were valued at more than $1000 but less than $10,000, whereas the crime constitutes an aggravated misdemeanor if the goods are less than $1000. Iowa Code § 715A.6(2)(b), (c). Here, the jury found Pittman obtained more than $500 but less than $1000 worth of goods through theft by deception and further found the value of the goods obtained through the fraudulent use of the credit card were valued at more than $500. No special interrogatory was included listing the gradations of the crime.

This record demonstrates the jury made no finding that Pittman obtained or sought to obtain goods valued at more than $1000, either through theft by deception or the fraudulent use of a credit card. Pursuant to the statute, this is required for Pittman's conduct to constitute a class "D" felony under Iowa Code section 715A.6(2)(b). The State urges that, though no explicit finding was made, the jury could have found the goods obtained were valued at more than $1000, and the $500 on the verdict form was a typographical error. However, the possibility that this factual determination could have been made does not support the imposition of a penalty that, pursuant to the statute, requires the goods to

*actually* be valued at more than $1000. *See id.* Consequently, the imposition of a sentence for a class "D" felony was not authorized by statute, which renders the sentence illegal. *See Wade*, 757 N.W.2d at 628–29. We therefore vacate Pittman's sentence for his theft by credit card conviction and remand for resentencing, with judgment to be entered as an aggravated misdemeanor, pursuant to Iowa Code section 715A.6(2)(c). *See State v. Woody*, 613 N.W.2d 215, 217 (Iowa 2000) (noting the proper remedy when an illegal sentence was imposed is to vacate the sentence and remand for resentencing).

Having considered Pittman's arguments, we affirm both convictions and his sentence for theft by deception. However, in entering judgment for a class "D" felony when the factual basis only supported a conviction for an aggravated misdemeanor, the district court imposed an illegal sentence for the theft-by-credit-card conviction. Consequently, we vacate this sentence and remand for resentencing consistent with this opinion.

**CONVICTIONS AFFIRMED, SENTENCE FOR CREDIT CARD FRAUD VACATED, AND REMANDED.**