# IN THE COURT OF APPEALS OF IOWA

No. 14-0759
Filed August 19, 2015

**JESS CUEVAS,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.

_____

Appeal from the Iowa District Court for Hardin County, Steven Oeth, Judge.

Jess Cuevas appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

Douglas Cook, Jewell, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger and Douglas Hammerand, Assistant Attorneys General, and Randall J. Tilton, County Attorney, for appellee State.

Considered by Vogel, P.J., and Potterfield and Mullins JJ.

**POTTERFIELD, J.**

Jess Cuevas appeals the district court's denial of his application for postconviction relief.

On October 15, 2005, Cuevas's estranged wife was found dead in her home. Her skull was fractured, and her neck showed signs of strangulation. On the same day, special agents Callaway and Turbett visited Cuevas's rural home, where he was found with his children. The agents explained the situation. Cuevas was very talkative, and the conversation was recorded. After Cuevas and the agents conversed for a while, the following exchange took place:

> Callaway: Would it be possible—can we just—can we go in the police department? It's getting dark out here and I know it's kind of chilly. Why don't we go into the police department and we can bring the kids and they can come in with us and they can be comfortable.
> Cuevas: Do we have to go into the police department?
> Callaway: No, we don't have to. It would just be a lot simpler as far as—that way it's gonna—I'm not having very good luck with cell phone reception and that way I can pass on information and if they have more questions that I can ask you that you might be able to help with, we can go from there. I'm just—we're kind of at a loss of—you know, I'm tying these two guys up and I know the calls and the county are rising as [unintelligible].
> Cuevas: So where would we be going?
> Callaway: Well, we can—you know, I'm not totally familiar with this area. But we'd go to probably Norwalk P.D. or we can go to the sheriff's office, you know, whatever's closest or most convenient.
> Cuevas: Is this just to like file a report or what?
> Callaway: To get the information that you have. I mean that might be helpful in our investigation in case it does turn out to be, you know, of importance.
> Cuevas: All right. All right.
> Callaway: I appreciate your cooperation.
> Cuevas: All right. Do you want me to just follow you in the truck or what?
> Callaway: You're welcome to ride with me if you want. I mean you've got a lot on your mind and maybe you shouldn't be driving right now.

Turbett: That'd be safest, Jess.
Cuevas: All right.
[Unidentified Male]: I can take the girls back into town with me.
Cuevas: Okay. . . . All right. Let me go with you.
Callaway: That'd be great, Jess.

The agents took Cuevas to the Warren County courthouse. They found a room in the courthouse where they could speak. Cuevas continued to answer the agents' questions and to offer up his own opinions and observations. At one point, he began to feel as though the agents were accusing him of wrongdoing and stated, "I'm not gonna answer any more of your questions." He nevertheless continued conversing with the agents. He eventually stated, "I don't want to be held here anymore." The agents began to make arrangements to wrap up the interview. Cuevas continued for some additional time to converse with the agents without objection. The agents gave Cuevas a ride home.

Cuevas was charged with the murder of his wife about ten months later, on August 18, 2006. He was convicted, and this court affirmed the judgment and sentence. *See State v. Cuevas*, No. 08-1344, 2009 WL 3337606, at *12 (Iowa Ct. App. Oct. 7, 2009). He filed an application for postconviction relief on December 21, 2010. The district court denied the application, and Cuevas now appeals.

On appeal, Cuevas argues he received ineffective—i.e. constitutionally deficient—assistance from his trial counsel. *See State v. Vance*, 790 N.W.2d 775, 785 (Iowa 2010). We review the issue de novo. *See Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). "To establish his claim of ineffective assistance of counsel, [Cuevas] must demonstrate (1) his trial counsel failed to perform an

essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). "Failure to prove either element is fatal to an ineffective-assistance-of-counsel claim." *State v. Doggett*, 687 N.W.2d 97, 100 (Iowa 2004).

Cuevas claims his trial counsel failed to perform an essential duty because counsel did not file a motion to dismiss the charge for lack of speedy indictment. *See* Iowa R. Crim. P. 2.33(2)(a) (requiring an indictment be found within forty-five days of a defendant's arrest for the commission of the offense); *State v. Wing*, 791 N.W.2d 243, 246–51 (Iowa 2010). Cuevas asserts his interview with the agents on October 15, 2005, was an arrest and the trial information was not filed within forty-five days of that arrest.

In their October meeting with Cuevas, the agents did not arrest Cuevas according to the procedures of Iowa Code section 804.14 (2005).[1] An arrest may nevertheless have taken place if "a reasonable person in the defendant's position would have believed an arrest occurred." *Wing*, 791 N.W.2d at 249. We make a case-by-case factual determination. *Id.* at 248. Factors we consider include but are not limited to "what a suspect is told or not told about his arrest status" and "whether a person has been handcuffed or booked." *Id.* "Mere submission to authority does not result in an arrest." *Id.* (citation and internal quotation marks omitted). "[T]he question of whether an arrest has occurred does not turn solely

---

[1] "A person making an arrest must inform the person to be arrested of the intention to arrest the person, the reason for arrest, and that the person making the arrest is a peace officer . . . and require the person being arrested to submit to the person's custody . . . ." Iowa Code § 804.14(1).

on whether a reasonable person would have felt free to leave during the encounter." *Id.*

At no time was Cuevas told he was under arrest, handcuffed, or booked. He was in fact told his trip to the courthouse was optional. The transcript of the interview reveals Cuevas was very comfortable speaking to the agents and volunteered information and opinions without prompting or questioning. When Cuevas asked to leave, the agents made some arrangements with him as to what would happen next and soon thereafter gave him a ride home. Cuevas did not need to repeat his request. The request itself indicates that Cuevas believed he was free to go.

Cuevas now suggests that he was not free to go. The record does not support his claim. First, Cuevas speculates there was "no way" the agents would have allowed him to remain on his property or go on his way if he had not agreed to go to the courthouse with them. Nothing in the record supports this assertion, and Cuevas's speculation as to what may or may not have occurred if he had refused to cooperate is not relevant since he did in fact freely cooperate with the agents. Second, Cuevas asserts "at no time was [he] allowed to leave" and there was "a guard present at all times." To the contrary, he was allowed to leave after he requested to do so. There is no evidence in the record to suggest the agents or other officers were acting as "guards" to physically prevent Cuevas from leaving the room.

Throughout the entire encounter, Cuevas and the agents were cordial with each other. The transcript of the interview does not reflect hostility between them, and Cuevas continued to engage in small talk with the agents even during

his ride home. Cuevas's behavior throughout the interview makes it clear that he did not believe he was under arrest. Neither would an objectively reasonable person so believe.

In contrast, *Wing* demonstrates circumstances that *would* lead a reasonable person to believe he was under arrest. *Id.* at 252. In *Wing*, officers discovered marijuana in the defendant's car. *Id.* The defendant "was immediately handcuffed, Mirandized, searched again, and placed in the back of the patrol car." *Id.* One of the officers "exerted his authority, objectively evidencing a purpose to arrest." *Id.* None of these factors are present in this case. Cuevas was not handcuffed, Mirandized, or placed in the back of a patrol car. The agents did not exert their authority to evince a purpose to arrest Cuevas.

Because the October 15, 2005 interview was not an arrest, there was no speedy-indictment issue with the trial information. Cuevas's trial counsel was therefore under no obligation to file a motion to dismiss the charge on that ground because "[c]ounsel has no duty to raise an issue that has no merit." *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010). Cuevas has not shown that his counsel failed to perform an essential duty, and his ineffective-assistance claim fails as a result. We affirm.

**AFFIRMED.**