# IN THE COURT OF APPEALS OF IOWA

No. 14-1401
Filed November 12, 2015

**JULIEN MARTELL SKIPPER,**
　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　Respondent-Appellee.
_____

　　　Appeal from the Iowa District Court for Scott County, Henry W. Latham II,

Judge.


　　　Julien Martell Skipper appeals from the denial of his application for

postconviction relief. **AFFIRMED.**



　　　Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich,

Assistant Appellate Defender, for appellant.

　　　Thomas J. Miller, Attorney General, and Alexandra Link, Assistant

Attorney General, for appellee State.



　　　Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

Julien Martell Skipper appeals from the denial of his application for postconviction relief. He argues that his trial counsel was ineffective for having failed to ensure that he was fully apprised of the special sentencing implications of his guilty plea to a class "C" felony count of lascivious acts with a child. We find that Skipper has not proved prejudice as a result of the alleged ineffective assistance of his counsel. We therefore affirm.

## I. Background Facts and Proceedings

On April 9, 2007, the State of Iowa filed a trial information charging Skipper with three crimes: (1) sexual abuse in the third degree in violation of Iowa Code section 709.4 (2007), a class "C" felony and also a "forcible felony" pursuant to Iowa Code section 702.11;[1] (2) harboring a runaway child in violation of Iowa Code section 710.8, an aggravated misdemeanor; and (3) assault resulting in bodily injury in violation of Iowa Code sections 708.1 and 708.2(2), a serious misdemeanor. These charges were based upon allegations that Skipper, who was in his mid-twenties, had been engaged in a sexual relationship with a twelve-year-old girl.

Skipper entered into a plea agreement with the State whereby he pled guilty to counts 2 and 3—the two misdemeanors—and to a newly-added fourth

---

[1] The State's trial information simply lists count 1 as sexual abuse in the third degree in violation of Iowa Code section 709.4, and does not indicate that the crime qualifies as a forcible felony. However, the plain language of the statute makes it is clear that Skipper was more specifically charged under subsection 709.4(2)(b) ("A person commits sexual abuse in the third degree when the person performs a sex act [and] [t]he act is between persons who are not at the time cohabiting as husband and wife and . . . [t]he other person is twelve or thirteen years of age."). It is also clear that the charge was understood to be a forcible felony, based upon the content of the written plea agreement itself, which lists count 1 as "sexual abuse in the third degree (forcible felony)."

count of lascivious acts with a child in violation of Iowa Code section 709.8, a class "C" felony. In exchange for the guilty plea on counts 2, 3, and 4, the State agreed to dismiss count 1 at sentencing. The plea agreement allowed the parties to make whatever recommendations they wished at sentencing.

The plea agreement, the amended and substituted trial information containing the newly-added count 4, and written pleas of guilty to the two misdemeanor counts were filed on August 8, 2007. A plea hearing was held the same day. During the plea colloquy, Skipper and the court had the following exchange about the consequences of a guilty plea to the count of lascivious acts with a child:

> THE COURT: Now, when we talk about your maximums and minimums under Lascivious Acts with a Child, although it's not a forcible felony, you will be required to register as a sex offender, and you would also have to have a lifetime parole under that section, and there is an enhancement section that you should be aware of that if you should happen to be convicted of another [count of] Lascivious Acts with a Child, under the enhancement code section of 902.14, I think it is, and under 901A.2, you could be charged with a Class "A" Felony. Do you understand all of that? Because that all has to do with ramifications of your plea of guilty. Do you understand all of that as I explained it to you?
> SKIPPER: What lifetime parole? What do you mean by that?
> THE COURT: Well, they have sex offenses now—under most sex offenses, you have a lifetime parole provision that you're under the supervision more or less, even if you're out of custody of the Department of Correction, for your lifetime, which they would tell you what that meant, so I don't know exactly other than that you probably have to let them know where you are living. It's a relatively new statute, to be honest, so I'm not sure what it will mean. I know it seems odd that you can be on lifetime parole, even if you don't go to prison, but that's what the code requires.
> SKIPPER: Okay. I'm pleading.
> THE COURT: What?
> SKIPPER: I'm going to plead.

Nothing further was said about the special sentencing provision or the lifetime parole that would be imposed.

At Skipper's sentencing hearing on September 5, 2007, the State argued he should serve time in prison, though it made no recommendation as to whether the sentences for the three counts should run concurrently or consecutively. Skipper, on the other hand, asked the court to choose either probation or another alternative to imprisonment. On his desire for a suspended sentence, Skipper told the court:

> Your Honor, I'm sorry for even being in front of you today. I have never even been to jail. Just doing all these days in jail, just help me find belief in God and give me the opportunity to be able to learn from this experience. I'm so resentful for even being in front of you today. Embarrassed, I mean I've never even been to jail. This is the scariest thing I've been through in my whole entire life. I have lost everything. . . . And just pretty much saying, you know, I would be able to complete this successfully, to the state and prove to the state that I'm worthy enough of giving at least one chance. I've never been in trouble before. Just all I'm asking is just for one chance. . . . I mean, I did 161 days. I never even spent a day in jail. I'm sorry, your Honor. I would ask for one chance, you know?

After considering the recommendations, the court sentenced Skipper to the following terms of imprisonment for each of the three counts, to run concurrently: for count 2, a term not to exceed two years; for count 3, a term not to exceed one year; and for count 4, a term not to exceed ten years. However, the court suspended the sentences, allowing Skipper to avoid jail time if he successfully completed a three-year term of probation. Upon realizing that it had failed to impose the special sentence applicable to the count of lascivious acts with a child, the court held a second sentencing hearing on October 18, 2007, where it informed Skipper his sentence included lifetime parole to run

consecutively to his suspended sentence for lascivious acts. *See* Iowa Code § 903B.1.

Then, on June 25, 2009, nearly two years after he was sentenced, Skipper's probation was revoked due to a probation violation, and his sentences of incarceration were imposed. Thereafter, he filed an application for postconviction relief, arguing his trial counsel was ineffective for having failed to ensure he was fully apprised of the special sentence of lifetime parole that would be imposed as a result of his guilty plea to the class "C" felony count of lascivious acts with a child. A postconviction-relief hearing was held on June 4, 2014, at which Skipper testified that if he had understood the ramifications of the special sentence, then he "would have kept going or either would have went to trial or waited for a better plea than that." The postconviction-relief court denied his application on July 31, 2014, finding both that Skipper was made aware of the special sentencing provision he now claims ignorance of and that Skipper had not proved prejudice as a result of the alleged ineffective assistance of his counsel.

Skipper appeals.

## II. Standard of Review

We normally review postconviction proceedings for correction of errors at law. *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011) (internal citations omitted). However, when an application for postconviction relief raises a constitutional claim, such as a claim of ineffective assistance of counsel, the matter is instead reviewed de novo. *Id.*

**III. Analysis**

In order to prevail on his claim of ineffective assistance of counsel, Skipper must establish both that "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W. 2d 128, 133 (Iowa 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Both elements must be proved by a preponderance of the evidence. *Id.* at 133. In order to prove prejudice, Skipper "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. More specifically, in this context he "must show that there is a reasonable probability, but for counsel's errors, he . . . would not have pleaded guilty and would have insisted on going to trial." *Straw*, 709 N.W.2d at 138. If we find that prejudice is lacking, we may decide his claim on that ground alone without addressing his counsel's performance. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001).

We find Skipper has failed to show there is a reasonable probability he would not have pled guilty if he had been more fully apprised of the special sentencing provision of Iowa Code section 903B.1. It is true that at his postconviction hearing, Skipper testified that if he had understood the ramifications of the special sentence, then he "would have kept going or either would have went to trial or waited for a better plea than that." He further testified he "absolutely" would not have entered his guilty plea if he had understood at the time what the lifetime special sentence was, because "it's almost like pleading guilty and you're still incarcerated even when you're out." But Skipper's assertions must be judged in the context of the advice given to him by the court,

the strength of the State's case, and the advantages gained by entering into the plea agreement. *See Boschert v. State*, No. 13-0009, 2013 WL 6405468 (Iowa Ct. App. Dec. 5, 2013).

While we do recognize the difficulty of Skipper's task in meeting a burden of proof where we may decide to disbelieve his assertions about what he would or would not have done, we are left unconvinced by Skipper's testimony after consideration of these additional factors. We cannot ignore the obvious benefit he derived from his guilty plea—that it allowed him to avoid prison time. For although counts 1 and 4 are both class "C" felonies, the dismissed count 1, sexual abuse in the third degree, is also classified as a forcible felony for which a suspended sentence is not available. *See* Iowa Code §§ 702.11, 709.4(2)(b), 907.3. The amended count 4, lascivious acts with a child, is not a forcible felony. *See State v. Graves*, 491 N.W.2d 780, 782 (Iowa 1992). Thus, Skipper's plea allowed him to receive a suspended sentence. His statements at the time of sentencing reveal the import of this option. We are unconvinced Skipper would have rejected the plea agreement based upon the special sentencing provision; his goal was to avoid prison time, and he took what he viewed as his best option of achieving that goal.

Our assessment of the strength of the State's case against Skipper on the forcible felony count of sexual abuse in the third degree—the count Skipper avoided by entering into a plea agreement with the prosecution—also weighs against his testimony that he would have proceeded to trial. According to the minutes of evidence filed by the State, the twelve-year-old girl would testify that she considered herself to have been Skipper's girlfriend, and she and Skipper

had sexual intercourse between two and five times during the final week of their relationship and a total of between twenty and thirty times during the preceding year. She was able to describe the inside of Skipper's apartment, as well as his tattoos. The minutes also indicate the State had a number of witnesses who were prepared to present testimony corroborating various aspects of the girl's account, including the girl's mother, hospital personnel, and multiple employees of the Davenport Police Department.

Perhaps most damning for Skipper, however, was the State's evidence of his own admission that he had allowed the girl to perform oral sex on him. Skipper's admission was made during a recorded phone conversation with a Davenport Police Department detective (the detective had also repeatedly asked Skipper whether or not he and the girl had had sexual intercourse, but Skipper refused to answer the question, stating that he was going to "plead the 5th" to that inquiry so as not to incriminate himself). According to a police report attached to the minutes, the audio recording of the conversation was transferred to a compact disc for use as evidence at trial.

Skipper was facing a high probability of being found guilty of a forcible felony, which would mean mandatory prison time plus the special sentence about which he now complains. The plea agreement he entered into allowed him to receive a suspended sentence. His testimony that he would have sought a better deal or gone to trial is not convincing under the circumstances, and we agree with the postconviction-relief court that he failed to prove his claim of ineffective assistance of counsel. We therefore affirm.

**AFFIRMED.**