# IN THE COURT OF APPEALS OF IOWA

No. 16-1232
Filed July 6, 2017

**JUAN AGUILAR-GARCIA,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

An inmate appeals the court's denial of his application for postconviction relief. **AFFIRMED.**

Andrew J. Smith of Mack, Hansen, Gadd, Armstrong & Brown P.C., Storm Lake, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

Juan Aguilar-Garcia appeals the district court's denial of his application for postconviction relief, asserting two deficiencies in the representation he received from his attorney. Aguilar-Garcia argues (1) counsel did not sufficiently investigate his defense or prepare for a possible trial and (2) counsel misadvised him concerning the immigration consequences of his plea. Because Aguilar-Garcia fails to establish the performance of his counsel fell below professional norms, we affirm the court's denial of relief.

### I. Facts and Prior Proceedings

The State charged Aguilar-Garcia with four counts of sexual abuse in the second degree, class "B" felonies, for allegedly performing sex acts on a child under the age of twelve. *See* Iowa Code §§ 709.1, 709.3(2) (2011). On the day trial was set to begin in April 2012, Aguilar-Garcia entered an *Alford*[1] plea to one count of sexual abuse in the second degree. As part of the plea agreement, the State agreed to drop the three remaining counts. The district court sentenced him to twenty-five years in prison with a mandatory seventy-percent minimum. Aguilar-Garcia did not directly appeal his conviction and sentence.

On August 29, 2013, Aguilar-Garcia filed a pro se application for postconviction relief (PCR). On June 29, 2016, Aguilar-Garcia filed a recast petition, alleging his trial counsel provided ineffective assistance by not giving him the correct information regarding possible immigration consequences and by not being prepared for trial.

---

[1] Under *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), a defendant may consent to the imposition of a prison sentence without admitting participation in the crime.

The district court held a PCR trial on July 13, 2016, at which Aguilar-Garcia and his counsel both testified. Aguilar-Garcia told the court his attorney "should have talked with my witnesses and investigated this case more." Aguilar-Garcia also testified he believed from speaking with his attorney that he would be deported shortly after he entered his guilty plea and would not have to serve the mandatory minimum of seventeen years. Attorney Tomas Rodriguez contradicted Aguilar-Garcia on both points, testifying he was ready to proceed to trial and did not give his client any guarantees concerning how long he would serve in prison before being deported.[2]

After hearing the testimony and reviewing the criminal case file, the PCR court denied Aguilar-Garcia's application. On the question of trial preparation, the district court noted counsel had deposed the alleged victim and medical experts and counsel had reviewed all of the police reports. The court also credited counsel's testimony that he spoke with the witnesses identified by Aguilar-Garcia, who were sisters of the alleged victim, but that they had no direct knowledge of the alleged incidents and could only speak to his general character. The court did not accept the claim counsel was unprepared. On the claim regarding immigration consequences, the PCR court found counsel did not misadvise Aguilar-Garcia concerning the amount of time he would spend in prison before any deportation.

Aguilar-Garcia now appeals the denial of his PCR application.

---

[2] Rodriguez consulted an immigration attorney regarding Aguilar-Garcia's illegal-alien status. The immigration attorney believed Aguilar-Garcia would not serve the entire minimum sentence before being deported. Rodriguez is fluent in Spanish and gave this information to Aguilar-Garcia.

## II.     Standard of Review

We review claims of ineffective assistance of counsel de novo.  *See Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012).  To prevail, Aguilar-Garcia must prove by a preponderance of the evidence that his counsel failed to perform an essential duty and prejudice resulted from this failure.  *See State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009); *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).  To establish trial counsel failed to perform an essential duty, Aguilar-Garcia must overcome this court's presumption counsel performed competently and must prove counsel's performance fell below the standard of a reasonably competent attorney.  *See Straw*, 709 N.W.2d at 133.  An applicant's "inability to prove either element is fatal" to the constitutional challenge.  *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).  In the context of a guilty plea, Aguilar-Garcia must prove but for counsel's alleged errors, he would not have pleaded guilty and would have forced the case to go to trial.  *See Carroll*, 767 N.W.2d at 641.

## III.    Ineffective Assistance of Counsel

### A. Investigation and Preparation

Criminal defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland v. Washington*, 466 U.S. 668, 691 (1984).  Aguilar-Garcia argues his counsel did not sufficiently investigate and prepare for trial, and specifically failed to timely speak to two sisters of the alleged victim who could have served as character witnesses for him.  But defense counsel explained at the PCR hearing that he *did* interview these two potential witnesses

and discovered they did not have any direct knowledge about the case. The only testimony the sisters could have offered was how well they knew Aguilar-Garcia and the fact they did not believe he could have committed these acts. Further, counsel reviewed the county attorney's file, including police reports and statements, medical reports, and "videotapes and recordings of the interview of the victim." His trial preparation also included deposing the alleged victim and medical personnel.

Counsel did a reasonable inspection of the evidence and thus adequately prepared for a potential trial. Counsel's assessment the sisters' testimony would not be beneficial to Aguilar-Garcia's case because they had no knowledge of the crime was a tactical decision that did not amount to ineffective assistance. "When counsel makes a reasonable tactical decision, this court will not engage in second-guessing." *Fryer v. State*, 325 N.W.2d 400, 413 (Iowa 1982). We find no breach of duty on the claim of inadequate investigation and preparation.

### B. Advice on Immigration Consequences

Criminal defense attorneys have a duty to advise their clients regarding the immigration consequences of a guilty plea. *Morales Diaz v. State*, ___ N.W.2d ___, ___, 2017 WL 2491640, at *3, (Iowa 2017); *see also Padilla v. Kentucky*, 559 U.S. 356, 367–68 (2010). Here, defense counsel testified he informed Aguilar-Garcia that deportation was likely but the timing was uncertain. Aguilar-Garcia testified that based on his attorney's advice, he believed he would be incarcerated for less than one year before being deported. On appeal, Aguilar-Garcia contends that advice was inaccurate because Aguilar-Garcia later

learned he might not be deported until he served his mandatory minimum sentence.

Aguilar-Garcia's complaint that he was not deported more quickly is not the normal concern regarding adverse immigration consequences. Generally, counsel's duty is to warn noncitizen clients whether a conviction rendered them deportable. *Padilla*, 559 U.S. at 369. Our supreme court recently found a criminal defense attorney ineffective for failing to provide information concerning the "sweeping ramifications" of pleading guilty to "an aggravated felony." *Morales Diaz*, __ N.W.2d at __, 2017 WL 2491640, at *7.

Aguilar-Garcia's case differs from the situation in *Morales Diaz*. Aguilar-Garcia is not claiming he was unaware of possible adverse immigration consequences, but rather he is claiming he was not deported quickly and has had to serve more of his prison sentence than he expected. Aguilar-Garcia's counsel consulted an immigration attorney and relayed that information to Aguilar-Garcia. That effort is distinct from *Morales Diaz*, where counsel shared his erroneous belief with his client that missing an immigration hearing foreclosed all possibility of relief. *See id.* Aguilar-Garcia was informed of possible negative immigration consequences but hoped he would be deported more quickly. Because Aguilar-Garcia's attorney offered no guarantee when his client would be deported, Aguilar-Garcia's claim that counsel breached a duty is without merit.

### IV. Conclusion

Aguilar-Garcia fails to show his counsel performed below constitutional norms. Like the district court, we find the ineffective-assistance-of-counsel

claims raised by Aguilar-Garcia's PCR application are without merit, and we therefore affirm.

**AFFIRMED.**