# IN THE COURT OF APPEALS OF IOWA

No. 19-0802
Filed October 21, 2020

**LUCAS D. LANKFORD,**
　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　Respondent-Appellee.
_____

　　　Appeal from the Iowa District Court for Webster County, James M. Drew,
Judge.


　　　In this postconviction-relief (PCR) appeal, Lucas Lankford contends both
his plea counsel and PCR counsel were ineffective. **AFFIRMED.**



　　　Jessica M. Donels of Parrish Kruidenier Dunn Boles Gribble Gentry Brown
& Bergmann L.L.P., Des Moines, for appellant.

　　　Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney
General, for appellee State.


　　　Considered by Doyle, P.J., and Mullins and Greer, JJ.

**DOYLE, Presiding Judge.**

In this postconviction-relief (PCR) appeal, Lucas Lankford contends his guilty plea was not knowingly and voluntarily given because of plea counsel's ineffective assistance. He also contends his plea counsel was ineffective in other ways. And he contends his PCR counsel was ineffective. After a de novo review, *see Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012), we find no merit to Lankford's arguments that his guilty plea was not knowing and voluntary. His other contentions concerning plea counsel were not raised before or decided by the PCR court and are therefore not preserved for our review. Because the record is inadequate to allow us to decide whether PCR counsel breached a duty and whether prejudice resulted, we cannot resolve this new claim on appeal. We affirm the PCR court's order denying Lankford relief.

## I.      Facts and Prior Proceedings.

Lankford was charged with five counts of second-degree sexual abuse, three counts of incest, and one count of sexual exploitation of a minor for acts involving his child over a long period. Some of the acts were video recorded. Lankford entered into a plea deal with the State. He pled guilty to two counts of second-degree sexual abuse, a class "B" felony, in violation of Iowa Code section 709.3(1)(b) and (2) (2013); one count of sexual exploitation of a minor, a class "C" felony, in violation of Iowa Code section 728.12(1); and one count of incest, a class "D" felony, in violation of Iowa Code section 726.2. His sentences were set to run consecutively, as described in the joint sentencing recommendation that was part of the plea agreement.

After he pled guilty, Lankford appealed claiming the sentencing court abused its discretion by failing to give proper consideration to factors other than the nature of the offenses. *State v. Lankford*, No. 16–1152, 2017 WL 1405912, at *1 (Iowa Ct. App. Apr. 19, 2017). We affirmed. *Id.* at *2.

Lankford applied for PCR in September 2017, asserting his plea counsel was ineffective. During his PCR trial in July 2019, Lankford claimed his plea counsel failed to advise him properly on the mandatory-minimum requirements related to his class "B" felonies.

After trial, the PCR court concluded that Lankford failed to meet his burden of proof. The court found plea counsel's testimony credible and that plea counsel advised Lankford of the consequences of the plea agreement. The court denied Lankford's application. Lankford now appeals, arguing both his plea counsel and PCR counsel provided ineffective assistance.

## II.     Standard of Review

Appellate courts review PCR proceedings for errors at law, while claims of ineffective assistance of counsel are reviewed de novo*. Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). When exercising a de novo review, "we give weight to the lower court's findings concerning witness credibility." *Id.*

## III.     Analysis.

### A.  Ineffective Assistance of Plea Counsel.

Lankford's plea counsel did not move in arrest of judgment to challenge the plea. "A defendant's failure to challenge the adequacy of a guilty plea proceeding by motion in arrest of judgment shall preclude the defendant's right to assert such challenge on appeal." Iowa R. Crim. P. 2.24(3)(a). But failure to move in arrest of

judgment "does not bar a challenge to a guilty plea if the failure to file a motion in arrest of judgment resulted from ineffective assistance of counsel." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). So Lankford claims his plea counsel gave ineffective assistance resulting in a plea that was not knowing or voluntary.

To prevail on a claim of ineffective assistance of counsel, the applicant must show both breach of an essential duty and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ledezma*, 626 N.W.2d at 142. "To establish the first prong, the applicant must [show] the attorney performed below the standard demanded of a reasonably competent attorney." *Ledezma*, 626 N.W.2d at 142. "Thus, we measure the attorney's performance against 'prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688).

"Due process requires the defendant enter his guilty plea voluntarily and intelligently." *Straw*, 709 N.W.2d at 133. "If a plea is not intelligently and voluntarily made, the failure by counsel to file a motion in arrest of judgment to challenge the plea constitutes a breach of an essential duty." *State v. Philo*, 697 N.W.2d 481, 488 (Iowa 2005).

To satisfy the prejudice prong in the context of a guilty plea, a "defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial." *State v. Myers*, 653 N.W.2d 574, 578 (Iowa 2002) (emphasis omitted) (*quoting Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

At the beginning of the PCR trial, Lankford's counsel claimed Lankford's plea counsel was ineffective by not properly evaluating the case and by advising

Lankford to take a plea agreement that required "a very onerous prison sentence."

In addressing Lankford's claim, the PCR court stated:

> The court accepts as credible [plea counsel]'s testimony that he advised the applicant of the consequences of the plea agreement for two reasons. The first is that it borderlines on the absurd to believe that an experienced criminal defense attorney such as [plea counsel] would have failed to do such a thing. Second, if he had failed to do so, surely the applicant would have protested when the terms of the plea agreement and the related consequences were clearly stated, more than once, at his plea change hearing by the prosecutor and the judge.

We agree. When evaluating the evidence, "we give weight to the lower court's findings concerning witness credibility." *Taylor v. State*, 352 N.W.2d 683, 687 (Iowa 1984).

During the PCR trial, plea counsel gave these answers to support his position that Lankford had the best deal he could get and that he engaged in a thorough conversation with Lankford, including calculating as to when he thought Lankford would be released:

> A. [T]here was some reluctance to accept the deal . . . . And ultimately they decided to take the offer because they didn't think they would get a better result if they took it to trial.
> . . . .
> Q. Do you recall any discussions about the practical impact on Mr. Lankford about how old he would be when he would be eligible for parole or any conversations of that nature? A. Well, I believe he pled to two class "B" felonies with a seventeen-and-a-half-year minimum on each. They were going to run consecutive, so that's thirty-five years. So yes, I'm sure we calculated it. And I recall seeing an email just before we—just before the hearing today saying he would get out when he was seventy or something like that. But I'm sure we made the calculations as to when we thought he would be released.

And when Lankford was questioned about discussing his plea deal with his plea counsel, his testimony revealed that he did talk about the benefit of not going

to trial. His plea counsel also testified that he had no confidence that a judge would have granted Lankford a better deal than he was offered. As part of the agreement, the State agreed to not refer his case to federal authorities for federal prosecution of manufacturing child pornography. His plea counsel thought that Lankford could face a life sentence for child pornography because of the content he recorded. The next answer provides a clearer picture:

> Q. Did—other than dismissing the state counts, did [the prosecutor] make any other concessions concerning this case? A. She agreed not to refer it to federal authorities. It was her belief that the videotape would constitute child pornography. It would be categorized as child pornography that could potentially end up as a —or require—I don't know about require a lifetime offense, but it could have been a lifetime federal offense in [the prosecutor]'s opinion. I don't recall that I researched that issue. I took her word for it. But that really didn't matter too much to me. You know, the charges that I was dealing with were sufficient. And I believe they dismissed some "B" felonies that would require a seventeen-and-a-half-year minimum. If this case went to trial and a [child] had to testify, I don't have any confidence that a judge would have given him any better offer than what we got—any better sentence than what we—than what resulted in plea negotiations.

Plea counsel was sure he discussed with Lankford the minimums on the class "B" felonies and how old Lankford would be when eligible for parole. Plea counsel also testified,

> My belief was if Mr. Lankford just pled guilty without any agreement, that the judge, any judge, would run at least two or three of those counts consecutive to each other and—and maybe all of them. But yes. The ongoing and consistent nature and just the very purposeful, knowing purpose of it—not saying this very well—but it was just so— it was just so purposeful and—and there were videotapes. So it was no—there was no doubt in my mind that a judge was going to run some of these counts consecutive and possibly all of them.

Lankford testified,

> Q. And do you recall meeting with Mr. McCarville to discuss the plea? A. Yes, I do.

Q. And you also remember discussing the strengths and weaknesses of your case with Mr. McCarville? A. Yes, I do.

Q. Okay. And did you have discussions with Mr. McCarville at that time about the plea agreement? A. Yes, sir.

Q. Okay. And at that time did he explain to you what the actual offer was? A. I don't recall.

Q. Regardless— A. I think he did.

We find Lankford entered his plea knowingly and voluntarily. His plea attorney did not breach an essential duty in failing to challenge the plea on this ground.

The mountain of evidence stacked against Lankford is overwhelming. Plea counsel's testimony only reinforces our belief that any reasonable plea counsel would have also provided similar advice to Lankford. We find no persuasive grounds to find that but for the alleged ineffective assistance of Langford's trial counsel, Lankford would have not pled guilty and would have insisted on going to trial. So Lankford also fails on the prejudice prong.

For the first time on appeal, Lankford raises a raft of new complaints against his plea counsel. He contends plea counsel was ineffective "when he rushed the plea proceeding despite clear evidence that Lankford may not have understood his agreement with the State." He claims his plea counsel did not pursue mitigating evidence in support of concurrent sentencing. He maintains the court offered him up to a month for the continuation of the plea and sentencing hearing, and rather than use that time, plea counsel rushed Lankford back to court within forty-eight hours to plead guilty. And besides rushing him, Lankford asserts that his plea counsel advised him to forgo the use of a presentence investigation report "which could have provided mitigating evidence regarding Lankford's mental health." Lastly, he complains plea counsel submitted no mitigating evidence at sentencing.

The PCR court had no chance to consider the new issues Lankford now raises on appeal. And the PCR court did not address or rule on any of these new claims. Error is not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Our error preservation rules exist to ensure a record of some form is available for the appellate court to review. *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006). Because an ineffective-assistance-of-counsel claim requires an evaluation of counsel's actions in the context of a reasonably competent attorney, the court needs evidence for the standard of a reasonably competent attorney. We therefore decline to address those arguments for the first time on appeal.

## B. Ineffective Assistance of PCR Counsel.

Lankford contends that his PCR counsel failed to effectively represent him in several respects. He claims his PCR counsel failed to develop the record in not using discovery procedure and in not introducing testimony of his family members or evidence of his schizophrenia or mental capacity. Lankford also claims that his PCR counsel was ineffective in failing to pursue an independent Iowa constitutional claim for ineffective assistance of counsel.

Because the record is inadequate to allow us to decide whether PCR counsel breached a duty and whether prejudice resulted, we cannot resolve this new claim on appeal. *See State v. Harris*, 919 N.W.2d 753, 754 (Iowa 2018) ("If the development of the ineffective assistance claim in the appellate brief was

insufficient to allow its consideration, the court of appeals should not consider the claim, but it should not outright reject it."), *see also Goode v. State*, 920 N.W.2d 520, 526 (Iowa 2018). The proper mechanism for resolving claims of ineffective assistance of PCR counsel raised for the first time on appeal is for an applicant to file a separate PCR application in the district court. *See id.*

## IV. Conclusion.

We affirm the denial of Lankford's PCR application.

**AFFIRMED.**